No. 258.

R. T. COLE, EXECUTOR, ET AL. VS. THE CITY OF SHREVEPORT.

A contract duly authorized by law, made by an incorporated town or city for useful improvements, and duly executed by the contractor, will be enforced against the city as a debt for which it is liable, if the means of payment provided in the contract should fail through subsequent events, not due to the laches or fault of the contractor.

Cole, Executor vs. City.

APPEAL from the First District Court, Parish of Caddo.
*Taylor, J.*

*Alexander & Blanchard* for Plaintiffs and Appellees:

1. If the act of 1869, which imposed on front proprietors one-third of the cost of street paving, was repealed, which is conceded, then the city was liable for the whole amount.
   - It is no ground of complaint on its part that, by the contract, it was relieved of one-third of the cost of paving, when it should have paid the whole.
2. The provision made for the payment of the debt, at the time it was contracted, was entirely adequate and in intended conformity to law. That it should subsequently have failed, through the common error of both parties, does not cancel the debt itself.
   "Debts contracted, when provided for, become, to the extent of such provision, not only claims against the provided fund, but actual and valid debts of the corporation." 33 Ann. 390.
3. The charter of 1871, authorized the council to issue forty-year bonds. The power thus conferred was discretionary and mandatory. It was not conferred for the benefit of third persons, and the language of the act clearly indicates an intent on the part of the Legislature to confer a discretionary power. Dillon on Municipal Corporations, Sec. 62.
4. Under Act 109 of 1869, the city was bound for two-thirds of the cost of paving, because one side of the street was in front of its property, the river banks and batture. 13 Ann. 319.
5. When a city contracts with a paver that he shall be paid a portion of the price by the proprietors of property fronting on the street, and these proprietors refuse or neglect to pay, the city is bound for the amount. 5 Ann. 298, 537.
6. Because the contract only provided for the payment out of the wharfage dues, and such dues can no longer be collected, the city is not absolved from all other means of payment. Even if the contractors had expressly agreed not to look to any other fund for payment, the city would still be bound to pay them. 12 Ann. 225.
7. The city had a right to contract for the paving of its streets. Such a contract was made with plaintiffs. Under it they have furnished material, expended large sums of money, and done the work. The city has received and now enjoys the benefit of their labor, material and money. Because the city can no longer enforce the collection of a wharfage tax, out of which, under the contract, plaintiffs were to be paid, she is not thereby relieved from payment of the debt altogether. 96 U. S. 341.

*A. D. Land* for Defendant and Appellant:

1. The contract sued on was made on May 4, 1871, pursuant to provisions of Act 109 of 1869, a special local assessment law, which was repealed by adoption of city charter on the 27th of April, 1871. 27 Ann. 636.
2. Said contract was violative of said charter, which prohibited credit contracts for street improvements, and the pledge or alienation of wharfage dues to any particular creditor.
3. No adequate provision by taxation was made for debt sued for as required by Sec. 2448 of Revised Statutes of 1870, hence contract is not valid. If the provision actually made was lawful but insufficient, contract is valid only to extent of such provision. 33 Ann. 1179.
4. A pledge of wharfage dues, or the setting apart of a certain sum from general receipts, is not a compliance with the law. 29 Ann. 673.
5. Plaintiffs who sue on a contract cannot recover on a *quantum meruit*. Loque's Digest, p. 338, No. 11.

6.   The necessary or useful nature of the expenditure could not dispense from the duty of providing according to law.  31 Ann. 181.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiffs seek to recover judgment against the City of Shreveport in the sum of $47,666 31, as the unpaid balance on a contract between them and the city for grading and macadamizing a portion of one of the principal streets of the city.

From a judgment in favor of the plaintiffs the present appeal has been taken by defendant.

The record discloses the following facts and proceedings, which are not contested or disputed:

The contract was executed between plaintiffs and the competent city authorities on the 4th of March, 1871, and it purported to provide for payment thereof with reference to Act 109 of 1869, which required that in such contracts the proprietors of real estate fronting on the street to be paved should pay two-thirds of the entire cost of the improvement contracted for, and that the city should pay one-third of the same.

For the payment of the proportion due by the city, the contract stipulated that plaintiffs should receive all wharfage dues collected by the city from steamboats and other craft landing in front of that street, which was used as a wharf or landing during high water, up to the amount necessary to extinguish the city's share of the indebtedness thus contracted for.

The work was in due course completed by the contractors, at a cost of $98,192 49, which amount, by collections made from the abutting proprietors and from wharfage dues and other sources, has been reduced to the balance herein sued for.

It happened that, pending the negotiations for the contract, a new charter was enacted by the Legislature for the City of Shreveport, the act being signed by the Governor on April 27, 1871.

Contending that the provisions of Act 109 of 1879, under which the owners of abutting lots were held for two-thirds of the cost price of such improvements, had been abrogated by the provisions of the charter of 1871, which had taken effect, at the date of the execution of the contract, on the 4th of May, 1871, two of the abutting proprietors resisted the claim made for their respective shares in the payment of the work, and a litigation ensued, which resulted in their favor in this court in the case of Shreveport vs. Maples & Stubbs, 27 Ann. 636.   It was therein decided that the provisions of the Act of 1869, hereinabove referred to,

had become inoperative when the contract was entered into, and the two owners in question were released from any obligation thereunder.

The contributions exacted from all the other proprietors were paid, and the proceeds paid over to the contractors.

It happened later on that the owners of steamboats landing in front of the city also resisted the latter's claims for wharfage, and by a decision of this court, rendered in the case of Shreveport vs. Coast Line, 37 Ann. 562, which had been preceded in the same sense by a decision of the Federal Court, their contention was maintained, and in consequence no wharfage dues have been collected since December, 1878.

It thus happens that under the effect of judicial interpretation, the two sources of revenue from which plaintiffs' claim was to be liquidated have been paralyzed and destroyed, hence their contention that the city is liable, under the contract, for the remaining and unpaid balance.

The defence is substantially as follows:

1.   The contract was made under the provisions of Act 109 of 1869, which had been repealed by the charter of 1871, in force at the date of the contract.

2.   The ordinance which authorized the contract did not provide the means of paying for it, and was a nullity under Section 2448 Revised Statutes of 1870.

3.   The application of the proceeds of wharfage dues to the payment of the city's share in the cost of the work, was forbidden by the charter of 1871 then in force.

I.

It is error to say that the only authority for the contract was Act 109 of 1869.

The corporate powers of the city under the existing charter were the only legitimate source of authority in the premises.

The mode of payment was the only feature of the contract which rested on the authority of Act 109 of 1869, and only in so far as the liability of abutting proprietors was concerned.

And it is on that only feature of the contract that the decision of the case in the 27th Annual did, or could have, any bearing or effect.

It is not only conceded but earnestly contended that the legality of the contract must be tested under the charter of 1871. Indeed the city must have existed and operated either under its previous, or under the new born charter.

Now Section 10 of that charter fully empowers the council to pass all necessary ordinances "to regulate and make improvements to the streets," etc,

And Section 17 provides: "That the city council may, whenever it shall deem it to the public interest, by ordinance, provide for the paving, opening or widening of any street or streets or any part thereof * * * the cost of which shall be paid by the city." * *

We may here state that it was under the provisions of this section that the two owners refered to above obtained their release from liability under the Act of 1869, the provisions of which were held to have been abrogated by those of Section 17 of the charter of 1871.

The proof in the record is conclusive that in providing the mode of payment contemplated by the Act of 1869, all parties to the contract, and the property holders, were all in good faith of the opinion that the act was yet in force, and all but two proprietors voluntarily acted under its provisions. In what respect has the city been injured by that honest error of judgment? It is surely not by the fact that the contract as thus understood, was vastly more beneficial to her than the contract which the new charter authorized, and under which she alone could bind herself for the entire cost of the needed and indispensable improvements which were the subject of the contract. No one is now seeking any relief under the stipulations of the contract which were nullified by the abrogation of the provisions of the Act of 1869, and we conclude that the legality of the contract is not affected by that feature of the controversy.

## II.

The statement of facts in the beginning of the opinion shows that the ordinance authorizing plaintiffs' contract did provide means for the payment of the principal of the indebtedness to be incurred thereby, as required by the provisions of Section 2448, Revised Statutes, which was the only restriction to the full power to contract in the premises, on the part of the city, under the new charter. No interest was stipulated in the contract, and, of course, none was provided for.

But it is contended that section 17 of the charter regulated the only legal provision which could be made, and that the pledge of the wharf dues was not the mode directed by law.

That portion of the section reads: "Provided, that whenever the amount or cost of paving said streets * * * exceeds the amount of funds in the city treasury, then the common council are hereby authorized and empowered to issue bonds of the city, running forty years * * * the proceeds of which shall be used solely for the purpose for which they were issued."

A casual glance at the language is sufficient to an impartial mind to see that the mode indicated is not exclusive or imperative, or, in other

words, the proviso is not a limitation, but intended to be, and is, in effect, an extension of the powers conferred in the first part of the section.

The provision thus made was of slow and tardy execution, and under the most favorable circumstances, it must have been clear to the contracting parties that many years would elapse before payment could be effected in full, but the provision was nevertheless made, and the city, of all others, could not complain of the disadvantage resulting therefrom to the contractors.

It appears to us too plain to justify us to spend time in argument, for the purpose of showing that a city council which is *authorized and empowered* to issue bonds for a certain purpose, is not thereby compelled to issue such bonds, and that it may meet the exigencies of the case by some other mode, or by the use of some other available resource, provided that such course be not prohibited by some other legislative restriction or limitation.

### III.

The conclusions which we have just announced practically answer the city's third ground of defense, for we know of no law, and have been referred to none, which inhibited the city from appropriating wharfage dues to meet the cost of an improvement which was intended at the time to answer all the purposes of a wharf.

As it has been shown that the contract was legal, and that the means provided for by the city to pay for the costs of the same have partially failed, through no laches or fault of the contractors—the question now presented is whether the city can in consequence be held directly liable for the contract.

The contention on that point is that the contractors having accepted the proffered wharfage dues, in satisfaction of their work, they must be satisfied with the pound of flesh as " denominated in the bond," and that they have no recourse against the city outside of that particular source of revenue.

That question has been the subject of judicial investigation in several courts of this country, including our own State, and it has been solved against the views pressed in this case by the city attorney. The rule has been applied to cases in which the contract expressly and in terms stipulated that the contractor agreed to restrict his right of payment to the resources or revenues provided for in the contract.

But that difficulty is not presented in the case now under discussion. The contract contains the following significant clause:

Cole, Executor vs. City.

" Further it is agreed and understood that the true intent and mean-
ing of the above promise is that said city in good faith guarantees and
warrants the payment of the whole and entire sum due to said contrac-
tors for all the work done in accordance with this agreement." * * *

Jurisprudence has settled that notwithstanding a stipulation specially
excluding any recourse on the city, a contractor who had done useful
works, and whose payment failed by reason of subsequent events which
had diverted the revenues applied to his claim, could recover against the
city with which he had contracted.

That was the treatment applied by the Supreme Court of the United
States in the case of Hitchcock vs. Galveston, 96 U. S. 341.

The principle which underlies our conclusions in this controversy, is
so well and clearly expounded by that exalted tribunal, that we are in-
duced to make the following extracts from their decision :

" They, plaintiffs, are not sueing upon the bonds, and it is not neces-
sary to their success that they should assert the validity of those instru-
ments. It is enough for them that the city had power to enter into a
contract for the improvement of the sidewalks; that such a contract
was made with them; that under it they had proceeded to furnish ma-
terials and do work, as well as assume liabilities; that the city has re-
ceived and now enjoys the benefit of what they have done and furnished;
that for these things the city promised to pay ; and that after having re-
ceived the benefit of the contract the city has broken it. It matters not
that the promise was to pay in a manner not authorized by law. If pay-
ments cannot be made in bonds because their issue is *ultra vires*, it
would be sanctioning rank injustice to hold that payment need not be
made at all. Such is not the law. The contract between the parties is
in force, so far as it is lawful."

In another part of the opinion the following language depicts with
precision the attitude of the defendant in the present case :

" But the present is not a case in which the issue of bonds was pro-
hibited by any statute. At most the issue was unauthorized. At most
there was a defect of power. The promise to give bonds to plaintiffs in
payment of what they undertook to do was, therefore, at farthest, only
*ultra vires*; and in such a case, though specific performance of an en-
gagement to do a thing, transgressive of its corporate power may not be
enforced, the corporation can be held liable on its contract. Having re-
ceived benefits at the expense of the other contracting party, it cannot
object that it was not empowered to perform what it promised in re-
turn, in the mode in which it promised to perform."

The principle has been sanctioned by this court in the following cases; Cronan vs. Municipality, 5 Ann. 537; Semel vs. Gould, 12 Ann. 225.

In the latter case the contracting corporation had stipulated that the contractor could have no recourse against it in case of the failure of the mode of payment as agreed upon, but the court enforced liability against it under a call in warranty.

The court as at present composed had to consider the principle under discussion in the case of Oubre vs. Donaldsonville, 33 Ann. 390. It was there said:

"Debts contracted, when provided for, become, to the extent of such provision, not only claims against the *provided fund*, but *actual and valid debts of the corporation.*"

\* \* \* \* \* \* \* \* \* \*

"Were we now to decide that the corporate authorities and the creditors were mistaken in their honest belief that the particular provision made was constitutional, we would not, on that account, feel justified in holding that the debt of the town, contracted in good faith, and, to the extent of the provision, in intended conformity with law, was stricken with nullity. Justice would require that an honest error, shared by both parties, should not operate to the advantage of one and the destruction of the other. *We should hold that the corporation was bound to supply the equivalent of the provision made and to substitute a constitutional tax for the one supposed to be, but discovered not to be constitutional.*"

The foregoing considerations lead us to the conclusions reached by the district judge, announced in an elaborate and very clear and able opinion, which has been of valuable assistance in our study of this case.

Judgment affirmed.