## HARDAWAY CONTRACTING CO., Inc., v. CITY OF GRETNA.

### No. 17014.

Court of Appeal of Louisiana. Orleans.

Oct. 16, 1939.

Rehearing Denied Nov. 13, 1939.

Writ of Certiorari Denied Jan. 9, 1940.

Andrew H. Thalheim, City Atty., of Gretna, for appellant.

Jos. M. Jones, A. J. Waechter, Jr., and Wm. Behan Dreux, all of New Orleans, for appellee.

JANVIER, Judge.

This suit, another chapter in the much litigated controversy which resulted from the paving of portions of certain streets in the City of Gretna, is brought by the contracting company which laid the said paving. The amount claimed, $958.60, is alleged to be the balance due by the contracting company under the two contracts.

In the court below there was judgment in favor of plaintiff, as prayed for, with legal interest from September 15, 1931, which was the day on which the work was accepted. From this judgment the City of Gretna has appealed.

There were two separate contracts—one involving the paving of part of Second Street, the other concerning the paving of a part of Lafayette Avenue. Both were executed under authority of Act No. 3 of the Extraordinary Session of the General Assembly of Louisiana of 1929, which amends Section 34 of Act No. 136 of 1898. Defendant's principal contention is based on the theory that, where paving is undertaken under authority of the provisions of that Act, as amended, the contractor cannot look to the municipality for payment, but is relegated to claims against the respective abutting property owners for the reason that the said amending statute contains the following language:

"The entire costs, including culverts, headers, filling, grading, legal and engineering fees and charges, labor, material, etc., of the paving, graveling, or otherwise improving, of streets, alleys, or any portion thereof, as herein provided, shall be paid for by the abutting real estate owners according to the front foot rule herein provided."

The said statute provides that, when such paving is undertaken, the cost of the work shall be determined, including all legal and other expenses, etc., and that this entire cost shall be apportioned among the abutting property owners and that that portion due by each property on the "front foot" basis shall be assessed to the property and that then the respective property owners, within ten days from acceptance, shall make payment in cash, or may provide for the issuance of notes, payable in installments. The statute further provides that the notes accepted by the municipality may be assigned to the contractor without recourse against the municipality.

Pointing to these provisions of the statute, the defendant maintains in this court, for the first time and by exception of no cause of action, that, though a municipality is authorized to make such a contract, in doing so it acts as the agent for the abutting property owners, who alone are responsible to the contractor, who, because of the said statute, is prevented from seeking to hold the municipality directly liable. And it is further argued, thus, that only two remedies are available to the unpaid contractor. One is by mandamus to compel the municipal authorities to levy the assessments against the abutting property owners should they fail or neglect to do so. The other is to look to the abutting property owners for payment through these assessments.

The contracting company, on the other hand, interprets the provisions of the statute merely as recognizing that the municipality, in undertaking to effect such improvements, shall, as between itself and the abutting property owners, require that the latter be responsible for the cost, but contends that, as between the municipality and the contractor, there is nothing in the law which relieves the former of its responsibility and liability as the direct contracting party. And the contracting company points to a clause in each of the contracts under which the City of Gretna, so far as the contractor is concerned, assumed full responsibility for payment of the contract price. That clause in each contract reads as follows:

"And in consideration of the faithful and complete performance of the Contractor of all and singular the obligations by it herein assumed, the Honorable Charles F. Gelbke, on behalf of the City of Gretna hereby agrees to pay unto said Contractor, his heirs, legal representatives and assigns, the cost of the work to be done under this contract in accordance with the bid of said Contractor * * *."

As we have said, it is not asserted that the contracts, as executed, were not authorized by law.

The contracting company concedes that the acceptance by it of notes of an abutting property owner constitutes payment pro tanto so far as the municipality is concerned and that, to the extent of the total amount of such notes received by it, the City is relieved from all responsibility, and

it admits that, on the two contracts, it has received notes aggregating $13,702.50. It also admits that it has received in cash $3,152.65 and that, therefore, to the extent of the sum of these two amounts, to-wit, $16,855.15, it has been paid. But it shows that the total amount admittedly earned by it under the two contracts was $17,813.75 and maintains that, to the extent of the difference, $958.60, it has received neither notes nor cash, and is, therefore entitled to judgment for this amount.

■ We think it quite apparent that it was not the purpose of the framers of Act No. 3 of the Extraordinary Session of 1929 (which, as we have said, is amendatory of Section 34 of Act No. 136 of 1898) to exempt the municipality from liability directly to the contractor for such amounts as may not be represented by notes assigned to the contractor and accepted by him, for the statute does not provide that in no .event may the city be liable to the contractor, in fact authorizing the City to issue to the contractor in certain instances its own certificates of indebtedness and providing that, when such certificates are issued, they "shall * * * constitute a direct obligation of the municipality."

In Cronan v. Municipality No. 1, 5 La. Ann. 537, is found a case presenting a somewhat similar contention. There the contract provided that the municipality itself should pay directly for a certain portion of the paving and that "for the remaining portion the said Cronan [contractor] shall receive the hereinafter described notes from the property holders in front of said paving". The contractor, unable to collect from some of the property holders for a portion of the work done, brought suit against the municipality. It was contended that the said municipality was not liable and that the contractor could look only to the property owners. The court said:

"Plaintiff contracted directly with the municipality not with the property holders. The stipulation contained in the contract merely designated a mode in which the municipality should be allowed to liquidate a part of its obligations to plaintiff, it did not extinguish those obligations, and that mode of payment not having been complied with, the municipality (which I consider as the debtor) is bound for the debt."

We may say the same here. The contract and the law merely contain provisions by which the municipality was granted permission to liquidate the indebtedness by the assigning of notes made by the property holders. Had it assigned notes sufficient to cover the entire indebtedness, discharge in full would have been effected thereby since the contract stipulated that the notes should be transferred without recourse against the City. But the trouble here lies in the fact that, obviously, there were not sufficient notes obtained, or not sufficient cash paid to cover the whole indebtedness.

Other cases somewhat to the same effect are: Semel v. Gould, 12 La.Ann. 225; Cole v. City of Shreveport, 41 La.Ann. 839, 6 So. 688; Burgess et al. v. City of Jefferson, 21 La.Ann. 143.

Defendant places great reliance upon Peake v. New Orleans, 139 U.S. 342, 11 S. Ct. 541, 545, 35 L.Ed. 131, but the facts there justify a distinction. There were three municipalities which, at that time, had not been merged into the City of New Orleans. They were New Orleans, Jefferson and Carrollton. The legislature created a consolidated commission for the purpose of draining and reclaiming lands situated in the three municipalities. These commissioners issued drainage warrants. Later the three municipalities were merged into one—the City of New Orleans—and the legislature authorized the City to operate the drainage system. It was contended that this made the City liable for the warrants which had been issued by the drainage commissioners. The Supreme Court of the United States said:

"If ever there was a case in which the responsibility of a city should be narrowed, this is one. By the legislation of the state it was denuded of all freedom of action. It had no choice of contractor or price. Neither the property to be taxed, nor the means or method of collecting the assessments, was intrusted to its discretion. This is not a case in which there was a failure on the part of the legislative body— the city council—to prescribe and provide sufficient machinery for the collection of assessments. No superintendence of the financial department, whether as to the property to be assessed, the amount of the assessment, or the collection thereof, was intrusted to the municipality. All this financial power was placed directly, by state action, without its consent, in one of its official boards. Thus denuded of freedom of action it may properly insist upon the narrowest limits . of responsibility. If the

financial duty was devolved, without its consent, upon one of its administrative boards, and such board was derelict of duty, it may properly say to a complaining party, 'Your remedy was mandamus to compel prompt and efficient action by that board.' "

Here the City of Gretna selected the contractor, arranged for the price of the work, and fully and completely conducted the negotiations. It then entered into the contract and expressly made itself responsible for payment.

We have discussed the principal controversy which was presented by the exception of no cause of action filed in this court.

In the trial court there was filed a prayer for oyer and an exception of vagueness. Both of these were based upon the asserted failure of plaintiff to set forth definitely the names of the various property owners whose notes it had received. But there is found in the record a statement setting forth these amounts, which, apparently, was found satisfactory by the trial court, and, in addition to this, it is obvious that the City itself should' be able to obtain from its own records a full and complete statement showing just what notes had been transferred and what cash had been paid.

On the merits of the controversy there is no serious defense. As we have said, the proof is entirely in favor of the contracting company and fully substantiates its claim that there is yet due the balance sued for, to-wit, $958.60.

The judgment appealed from is slightly erroneous in that it awards legal interest from September 15, 1931. The statute provides that the property owners shall make payment in cash within ten days from the date on which the assessment is levied, or within that time shall give their notes, bearing 8. per cent. interest, for the unpaid portion. The assessment was made on September 18, 1931, and therefore interest should not have been allowed to run until ten days later—September 28, 1931. This is an error of minor importance. As a matter of fact, since the law authorized interest at 8 per cent. and the contract stipulated for interest at 8 per cent., the contractor would have been entitled to the higher rate of interest, had it been prayed for.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the allowance of legal interest from September 28, 1931, instead of from September 15, 1931.

And it is further ordered, adjudged and decreed that, in all other respects, the judgment appealed from be and it is affirmed at the cost of appellant.

Amended and affirmed.