## OKLAHOMA CITY et al. v. EASTLAND et al.

No. 18187—Opinion Filed Nov. 27, 1928.

Rehearing Denied Feb. 19, 1929.

Malcolm W. McKenzie, J. Frank Martin, and G. A. Paul, for plaintiffs in error.

E. E. Blake, Gustave A. Erixon, Suits & Hall, and John A. Maupin, for defendants in error.

JEFFREY, C. This appeal involves the

legality of a proceeding by the city of Oklahoma City to reassess certain property for street improvements. A clear understanding of the questions involved necessitates a somewhat detailed statement of the facts leading up to the filing of the suit. On July 29, 1909, the city of Oklahoma City adopted ordinance No. 1064, by the provisions of which it levied a special assessment against the several lots and tracts of land along Classen boulevard, abutting the paved roadways, from the north line of Sixteenth street to the north line of Thirty-Seventh street, to pay the costs of the street improvements. Classen boulevard has a strip of land through the center, about 33 feet in width, with a roadway on either side. The street improvement consisted of the paving of these two roadways. The assessments, as per the ordinance, were levied against the Oklahoma City Railway Company, which occupied the center strip with a street car line, as well as against abutting property on the east and west of the boulevard. The railway company held the center strip under certain grants and conveyances which will be particularly described hereinafter. The railway company refused to pay its assessments, and on April 21, 1910, brought an action against the city of Oklahoma City in the Circuit Court of the United States for the Western District of Oklahoma, later the United States District Court for said district, to enjoin the levy and collection of the assessments made by virtue of ordinance No. 1064. The city failed to answer within the time allowed. An order pro confesso was entered on April 25, 1912, and on May 31, 1913, a final decree was entered declaring the assessment involved invalid, and permanently enjoining the city from taking any proceedings to collect the same. The decree was not appealed from and became final.

Thereafter, one Walter E. Orthwein, who became the owner and holder of the special assessment bonds issued by the city in payment of the improvements, and for which the assessments were made to pay, brought an action in the United States District Court of the Western District of Oklahoma, for judgment against the city for the amount of delinquent assessments, which had been levied against the Oklahoma Railway Company, or its property, on the ground of negligent failure to comply with the obligation of its bonds, since the assessments had been held invalid, and the city had refused to make reassessments and meet the obligations of the bonds. There were four counts in the petition involving separate paving contracts. The fourth count involved the assessment made under ordinance No. 1064, and here in-

volved. The district court rendered judgment in favor of Orthwein and against the the city on the fourth count for the sum of $4,076.02, on the theory that the invalidity of the assessments against the railway company's property had formerly been adjudicated, and that the city was liable for negligence in failing to comply with the obligations contained in its bonds. The city appealed to the Circuit Court of Appeals, and the judgment of the trial court was affirmed on the same theory. Oklahoma City v. Orthwein, 258 Fed. 190. Thereafter, the city undertook to reassess and reapportion the expense of the street improvements which had originally been assessed against the railway company against the property owners on the east and west of what is known as Classen boulevard. The city ascertained the amount due by reason of the improvements upon which to base a reassessment to be the sum of $29,662.10. On June 8, 1920, the city adopted what it termed a reassessing ordinance, No. 2213, whereby the additional sum of $29,662.10 was levied against the properties on the outside of the boulevard. On August 6, 1920, this action was commenced in the district court of Oklahoma county by A. M. Eastland and numerous other property owners, against whose property the city had attempted to reassess the sum above mentioned, to enjoin the levy and collection of the reassessments against their respective properties. The trial court found for plaintiffs and awarded a decree enjoining permanently the city of Oklahoma City, the city clerk, county clerk, and county treasurer from extending said reassessments against the various properties owned by plaintiffs, and from collecting the same. From this judgment, the defendants have appealed.

Counsel for defendants contend that the judgment of the trial court is contrary to law. The principal question involved and argued under this assignment is whether or not the city is vested with power, under the facts in this case, to impose upon the property of plaintiffs the sum of $29,662.10, supposedly the amount for which judgment was rendered in favor of Orthwein, interest and costs thereon, and the balance of unpaid special assessments, which were originally levied against the Oklahoma City Railway Company, in the form of a reassessment proceeding. It appears from the record that at the time the city commenced proceedings for reassessment, the judgment theretofore rendered against the city in favor of Orthwein had been paid and released. This, no doubt, was paid by general ad valorem taxation. It also appears that the special assessments against the property of plaintiffs

for the original street improvement along Classen boulevard had been fully paid.

The judgment entered by the United States District Court in favor of the railway company, enjoining the city from levying and collecting the special assessments against its property, has become final, and is res adjudicata as to the railway company. Oklahoma City v. Orthwein, 258 Fed. 190. However, for other purposes, it becomes necessary to here discuss the question of liability of the railway company's right of way situated along the center of Classen boulevard for special assessments for the payment of street improvements. The original assessing ordinance seems to have made the assessment against the railway company instead of against the property, as provided by law. The law governing street improvements and the payment thereof, at the time the paving procedure in this case was adopted, was article 1, ch. 10, Session Laws 1907-08. Section 3, art. 1 of said chapter, provides that the cost of such street improvements "* * * shall be apportioned among the lots and subdivisions of such quarter block, according to the benefits to be assessed to each lot or parcel, as hereinafter provided." Throughout the entire act it is provided that the assessments shall be made a charge against the abutting property, and are declared to be a lien when made against the lots and tracts of land so assessed co-equal with the lien of other taxes.

In the case in which the railway company obtained an injunction against the collection of said special assessments, it appears to have been the contention of the railway company that the strip of land occupied by it for railway purposes was a privately owned right of way, and that, under the law, such a right of way was not a lot, piece or parcel of land fronting and abutting upon the improvement as contemplated by the street improvement law, and was not liable for special assessments. This appears to have been the view entertained by the court. There was no contention that the strip of land was not in fact a right of way under the exclusive use and control of the railway company, or that anyone else owned title thereto. Hence, it appears that the decree enjoined the levy and collection of the special assessments against the right of way, as well as against the railway company and its tracks. Shortly after this injunction was issued, this court held that another part of the railway company's right of way, held by similar grants to those by which the railway company holds the land here, was, in fact, abutting property, and subject to special assessments, the same as any other privately owned property. Oklahoma Railway Co. v. Severns Paving Co., 67 Okla. 206, 170 Pac. 216. Same, 251 U. S. 104. This holding was recognized by the Circuit Court of Appeals as a correct construction of the statutes involved in the Orthwein Case, supra. Whether the title by which the railway company holds its right of way in this case is of the same dignity as that in the Severns Paving Case, we shall presently see makes no difference, in a determination of the question involved. The question is, Is the strip of land occupied by the railway company owned as private property, or was it dedicated to the public for general street use? Is the land abutting property in contemplation of the statute? If so, it was, as a matter of law, liable as such for its portion of the street improvements. Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559; 4 Dillion on Municipal Corporations, par. 1451; 25 R. C. L. pp. 117 and 120. There is no exception named in the street improvement act as to privately owned abutting property. As we view it, the only theory upon which this property could rightly have escaped its portion of the cost of street improvements was to say that it had been dedicated and granted to the public for ordinary modes of travel. Some of the grants and dedications, by which the railway company obtained title, contained a reverter to its grantor in case the land be abandoned for the use of a street railway line. All of the railway company's land within this improvement district was obtained from private owners thereof prior to or simultaneous with the dedication of streets and alleys for public use. In no instance that we can find, did the railway company obtain its title or right of occupancy from the city or other subdivision of the sovereign. Many plats and dedications were offered in evidence. Some of them do not appear to have any relation to the questions here involved, but counsel for the city in their brief point to certain ones as the grants by which the railway company obtained title or right to occupy the land. These dedications show that the strip of land in question here was dedicated to the railway company or its predecessor, successors and assigns for street railway purposes by the same instrument which dedicated the streets and alleys in the various subdivisions to the public for general travel. Most of these dedications recite that the land is dedicated to the railway company for its exclusive use for street railway purposes.

All official plats of the various additions through which Classen boulevard runs, and which show the lots, blocks, streets, and al-

leys, show the railway company's right of way separated from the street or roadway except at street crossings, and the right of way was, in fact, curbed, and the public excluded therefrom, except at street crossings. The city has no control or dominion over this land, but it is under the exclusive control and dominion of the railway company. If the public can be lawfully excluded therefrom, the land is strictly private. Arnsperger v. Crawford, 101 Md. 247, 61 Atl. 413, 70 L. R. A. 497. If the streets or roadways along each side of the right of way were vacated by the city, the railway company's right to use and occupy its right of way would not cease.

The right of way being private property, it was, in fact and in law, liable for its share of the costs of the street improvement upon which it abutted, and the fact that the railway company might have owned less than an absolute fee title to it would make no difference. The question of who should ultimately bear the cost would be one between the railway company and those who might have a reversionary interest in the land. Were the law otherwise, an individual could reduce his title to something less than an absolute fee in contemplation of a paving project, and thus relieve his land from its proper burden of the expense of improvements, although benefited thereby. A careful reading of the applicable statutes can lead to no other conclusion. The purpose for which land thus situated is used cannot affect the question of its liability for the cost of street improvement. Figg v. L. & N. R. Co., 116 Ky. 135, 75 S. W. 269. It is contended that Oklahoma Railway Co. v. Severns Paving Co., supra, holds that a right of way of a street railway company is liable for special assessments for street improvement only when the title in the railway company amounts to a fee. Such is not the holding in the case. The court did hold that the title in the railway company in that case amounted to a fee, but a reading of that case will disclose that the court made a clear distinction between cases holding that a street railway company was not liable for special assessments and cases in which the street railway company owned the exclusive right of way. In the first class of cases, it is pointed out that the right to use the street was merely an easement where the public was not excluded. In the later class it is pointed out that the right of way is private from which the public is excluded, and is as much a lot or tract or parcel of land abutting on the improvement as though it were owned by an individual

person. The reasoning employed in that case supports the view we here express.

The record and reported cases hereinbefore referred to show that the city was guilty of negligence in failing to properly defend the action brought against it by the railway company in the federal court. It filed a demurrer which was overruled, and time was given to answer. It failed and refused to answer, but confessed the allegations of the bill, permitted a judgment to be entered and become final without prosecuting an appeal. The character and scope of the judgment rendered reflects negligence on the part of the city. The original assessment was probably void for lack of proper description of the right of way. There can be no doubt but that the unpaid balance of the expenses of this paving project is the result of the city's negligence in failing to make a proper levy and defend the action against it.

Under this state of the record, is the city vested with authority to impose upon plaintiff's property the expenses which, under the law, it should have levied and collected against the strip of land occupied by the railway company? We are impelled to answer in the negative. The city has no more authority in law to do so than it has to reassess the expenses of street improvement which rightfully belong against the property of an individual. If the city should carelessly and negligently permit an individual who owned property abutting street improvements to obtain an injunction against the collection of the taxes against his land, when as a matter of law there was no justification for such a decree, it would not even be contended that those special assessments affected by the decree could be heaped upon other property which had borne its just share of the expenses of improvements. The act which authorizes the levying of special assessments, requires that such expenses shall be apportioned among the lots and tracts of land benefited according to the benefits received. The plan attempted by the city does not meet this requirement, and cannot here be given sanction.

It is next contended that by reason of Section 7, art. 1, ch. 10, Session Laws 1907-8, the judgment of the federal court in favor of the railway company, holding that its right of way was not subject to special assessments for the street improvements, forecloses the question of the invalidity of the assessment. That provision of the act is as follows:

"In the event that any special assessment

shall be found to be invalid or insufficient, in whole or in part, for any reason whatsoever, the city council may, at any time, in the manner provided for levying an original assessment, proceed to cause a new assessment to be made and levied which shall have like force and effect as an original assessment."

It is to be observed that none of these of the parties to the action in the federal court, brought by the railway company, but counsel say that makes no difference, and cite as authority for their position, State of Washington v. City of Ballard (Wash.) 47 Pac. 970, and other cases from that jurisdiction. The original acts by which the city of Ballard was incorporated, and by which it undertook to levy assessments for street improvements, were held unconstitutional after certain improvements had been made by cities of this class and before the improvements had been paid for. A special act was passed for the purpose of meeting this emergency. It was provided in the act that councils of such cities or towns should levy new assessments for local improvements where former assessments had been or should thereafter be declared void by the courts, "either directly or by virtue of any decision of such court." The cases above referred to merely give a literal interpretation to that particular act, and we think have no application to the case at bar. It is next contended that the failure of the plaintiffs to appear and protest, upon due notice of reassessments, constitutes estoppel. When the city commenced its proceeding to reassess the benefits, it gave notice as required in case of original assessment. No objection was made on behalf of any of the plaintiffs. It should be sufficient to say that if the city had no authority of law to reassess the balance of unpaid costs of street improvement against the property of these plaintiffs, they would not be estopped by failing to present in any event. However, the authorities cited by counsel are all based upon original assessments, where the owners of the property sought to be charged stood idly by and watched the city invest large sums of money and labor in the improvements, and, in some instances, issued bonds for the payment thereof before objection was made. Certainly, in such cases the principle of estoppel would apply. However, in the case at bar there are no such facts. The improvements had been made, and the bonds issued for the payment thereof more than 10 years prior to the giving of notice of intention to reassess the property. The essential elements of estoppel do not here exist. The judgment of the trial court is affirmed.

TEEHEE, HERR, DIFFENDAFFER, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 46 L. R. A. 193; 15 L. R. A. (N. S.) 488; 29 A. L. R. 679; 25 R. C. L. p. 120; 4 R. C. L. Supp. p. 1571; 5 R. C. L. Supp. p. 1312. See "Judgments," 34 C. J. §1459, p. 1029, n. 71. "Municipal Corporations," 44 C. J. §2894, p. 532, n. 5; 3370, p. 784, n. 83.