### SEVERNS PAVING CO. v. OKLAHOMA CITY.

No. 20498. Opinion Filed April 19, 1932.

Withdrawn, Corrected and Refiled April 22, 1932.

Rehearing Denied July 12, 1932.

Twyford & Smith, Ames, Cochran, Ames & Monnet, and Mason & Hefner, for plaintiff in error.

M. W. McKenzie, Municipal Counselor, for defendant in error.

SWINDALL, J. This action was instituted to recover for breaches of what were alleged to be contractual obligations of the defendant city, and deemed to be capable of supporting liability ex contractu and ex delicto. It involves two paving contracts. Each contract contained the same provisions, and the material facts are the same in each instance.

Each contract contained the following paragraph, which the plaintiff contends created a contractual obligation:

"The city further agrees that it will cause the levy and collection of assessments against the property liable to the same under the laws of the state of Oklahoma, and will levy and collect annually, in the manner provided by laws of the state of Oklahoma, a sufficient tax to pay the bonds so to be issued, with the annual interest thereon as they shall become due; and the city agrees to pay out of the funds when collected from such tax levy said bonds and interest promptly when due to the holders of such securities at the office of the city treasurer of Oklahoma City, and the city agrees to cause to be made promptly the annual collections, as provided by law, of a sufficient amount of money to pay the securities so issued, together with all interest charges."

And each contract also contained the following paragraphs, which the plaintiff contends created contractual obligations:

"The city agrees to pass and adopt such ordinances, orders and resolutions and to take such other proceedings, in conformity with the laws of the state of Oklahoma, as will give to the bonds which are paid to the contractor under this agreement the highest possible market value and as will best and most speedily give effect to the provisions of the statute and this contract and the officers and employees of the city shall at all times and by all proper means facilitate the work to be performed hereunder.

"The city shall perform all the obligations imposed upon it by this contract and the laws of the state of Oklahoma promptly and without unnecessary delay, particularly with reference to the levying and collection of the special assessments and payments of the special assessments and payments of the proceeds thereof contemplated by this agreement and the laws of the state above mentioned."

It appears that the Oklahoma Railway Company contested assessments under each of these contracts, which were void for misdescription of the property, and that later the plaintiff instituted mandamus proceedings to cause a reassessment, and a judgment for a peremptory writ was affirmed by this court by an opinion in 67 Okla. 206, 170 P. 216, 10 A. L. R. 157, (Oklahoma Ry. Co. v. Severns Paving Co.), and affirmed on error to the Supreme Court of the United States, 251 U. S. 104, 40 Sup. Ct. 73, 64 L. Ed. 168, the latter decision having been rendered December 8, 1919.

In the meantime the plaintiff had used the paving bonds as collateral security for several loans procured in different places, the last loan having been obtained from the American National Bank of Oklahoma City, it having been renewed in various amounts between November, 1912, and March, 1915, when the last note matured and upon default the bank sold the pledged bonds to one R. A. Vose for 30 per cent. of their face value, which the plaintiff alleged was the market value of the bonds at the time of the sale; and the plaintiff claims that the loss was the result of the failure and refusal to properly assess the property of the railway company, and sues for the alleged depreciation of 70 per cent., claiming that such damage was suffered and was within the contemplation of the parties as a probable result of the breach of the purported contractual provision to so act as to maintain the market value of the bonds. In the meantime, before final judgment in the mandamus proceeding, Vose had settled with the Oklahoma Railway Company and surrendered for cancellation the bonds representing the assessments against its property.

Reduced to figures the claim of the plaintiff is that the refusal to assess the questioned amount of $24,186.37 under one bond issue of $131,566.04 reduced the market value of the bonds to $39,469.81, causing a loss of $92,097.23, and that the refusal to assess the questioned amount of $12,046.16 under the other bond issue of $56,683.23 reduced the market value of the bonds to $17,604.96, causing a loss of $41,077.25 ($41,078.27 according to our computation).

The trial court denied recovery upon the ground that the agreement was ultra vires.

The plaintiff bases its contention upon two propositions set out in its brief as follows:

"Proposition 1. The city had the power

to contract for the public improvements in question and to agree to pay for the work by issuing bonds supported by legal assessments against all of the property benefited thereby, and the city is individually liable for: (1) A failure to make such levy legally, or (2) for making the same in a defective manner, or (3) for a failure to collect the assessments when made.

"Proposition 2. The measure of damages is the difference between the market value of the bonds as issued with defective assessments."

The plaintiff seems especially anxious to convince the court that the contract in its entirety was valid, and since it has cited only cases having to do with liability for the contract price, it seems to be of the opinion such is a premise necessary to recovery for the failure to so perform their duty as to maintain the bonds at the highest market value, and that, if it can be successfully contended that there is such a liability (for the contract price), and that it is a contractual liability, then it would follow that the provisions upon which it relies for recovery, to take all steps required to maintain the bonds at the highest possible market value, would be a valid provision, and would entitle it to damages for the breach, notwithstanding the fact that it had parted with title to the bonds long before the action was instituted.

So, immediately after reciting its first proposition, at the very beginning of the argument in the brief, the plaintiff says:

"In view of the fact that the trial court denied relief to the plaintiff on the express and only ground that the contracts for the improvements in question made by the city of Oklahoma with the Severns Paving Company were ultra vires and void, and that no liability could result from the failure of the city to perform and breach of its obligation under the same, it is important at the outset to note that these contracts were held valid by the district court of Oklahoma county, the Supreme Court of the state of Oklahoma, and the Supreme Court of the United States, in an action between the same parties. We refer to Oklahoma Railway Company v. Severns Paving Co. et al., 67 Okla. 206, 170 P. 216, 10 A. L. R. 157. It was there held not only that the contracts were valid, but that the city had failed to properly levy the assessments against the property of the Oklahoma Railway Company benefited thereby, and that the lien to the contractors had been lost by reason thereof."

In the opinion it was said that the proceedings were regular up to the levying of the assessment in question, which certainly was not a holding that the contracts were valid further than that they were sufficient to sustain an assessment against the property. The decision did not hold the contracts to be valid in all respects. Nor did it hold that any lien had been lost to the contractors by the invalid assessment. On the contrary, it held that by reassessment the lien could be perfected.

The plaintiff also asserts that the opinion in the Severns Case, supra, was approved in Oklahoma City v. Eastland, 135 Okla. 155, 274 P. 651, apparently contending that the contracts were again held valid. Not so. That case grew out of another paving project. There the Oklahoma Railway Company had sued to enjoin an assessment upon the ground that its property was not subject to assessment, and obtained a final decree of injunction. The city then attempted to make up the shortage caused by the enjoined assessment by assessing the property of others a second time, and Eastland and others sued to enjoin the double assessment. All that the Eastland Case held was that the resulting loss could not be thrown upon the other properties by double assessment, and that the attempt to do so would be enjoined. The Severns Case was mentioned only as having held that property held by the kind of title under which the right of way was held was assessable, as a basis for the conclusion that the injunction was negligently suffered. No possible stretch of a most vivid imagination could induce a well-considered assertion that the Eastland Case held the contracts, or a similar contract, to be valid.

The plaintiff has wholly failed to produce any authority holding that such a provision as it must claim under in order to recover has ever been held valid by this court or by any other court passing upon a contract entered into in accordance with the laws of Oklahoma. The nearest it gets to it is in reference to the duty of the city to make and collect assessments to meet the bonds as they mature, citing cases from other jurisdictions holding that there was an implied obligation or guaranty, but, as will be seen, in each case they were referring to a duty to the owner of the bonds, and, what is more to the point, it will be seen that such an expression, if proper, is proper only with reference to the duty of a city where under the law it would be primarily liable except to the extent it has relieved itself by contractual provisions, or at least where the general power to contract is vested in the city and it is not forbidden to hold general revenue liable for the indebtedness.

Such a condition cannot arise under our paving laws, for the statutes do not confer

a general power to contract upon the city, and they expressly provide that the bonds shall **in no event become a liability of the city.** This court has never held that the bondholder is relieved from proceeding to force the assessing and collecting by reason of any failure or even refusal to assess, reassess, or collect, or that he could have an ordinary action which would lie against a city, either ex contractu or ex delicto, with the single exception of a suit to recover an assessment against its own property; but since the plaintiff has asserted that there is such a liability, and that it may be assumed by contract, we will examine his authorities; and in the examination of them bear in mind that in no instance did the court intimate that if there was liability, it could be to any one other than the one to whom the price was due, or for anything but the debt, or gave any intimation that it could survive to a contractor after he had parted with title to the evidences of indebtedness, or assigned his claim for the contract price.

(1) The plaintiff relies upon Oklahoma City v. Orthwein, 258 Fed. 190, 169 C. C. A. 258. That case grew out of the paving proceedings involved in the Eastland Case, and it was the judgment rendered in that case that brought about the injunction action by Eastland when the city undertook to make up the shortage caused by the injunction obtained by the company After the injunction the shortage necessarily resulted, and the consequence was that certain of the bonds held by Orthwein were defaulted. He sued the city to recover the amount of those defaulted bonds, and in the same action sued to recover on other defaulted bonds. The Circuit Court of Appeals held that notwithstanding the statutory provision that the bonds should not in any event become a liability of the city, yet the city was liable for negligence in the performance of duties imposed by the statutes with reference to the making and collection of assessments, and since because of the permanent injunction obtained by the railway company it had become impossible to assess some of its property, the court concluded that the city was liable, and that it was liable for the bonds so defaulted, with interest. We are not here concerned with the soundness or unsoundness of that argument or conclusion, which relates to a loss of the right to assess and causes a real loss of the previously existing right to assess and results from negligence and the bondholder has in no way contributed to the result. We will decide that question when it arises. But the court went further, and, in reversing the judgment of the trial court as to two other counts involving other bonds, said that in the further proceedings the plaintiff could recover on such of them as might be based upon attempted assessments of property which had never been subject to assessment. At an earlier point in the opinion the court had held: "Sixth. The claim that the power to pave is under the law and Constitution of Oklahoma given to the city officers, and not to the city, has no merit." And then it based the alleged liability upon the following rule announced in the opinion:

"Where a municipal or quasi municipal corporation, **which has power to make a contract** for internal improvements, contracts for them, **and stipulates** that the agreed price of the improvements shall be paid to the contractor out of the funds to be realized out of special assessments, or out of the proceeds of bonds it has the power to issue, and the corporation has power to make the assessments or to issue the necessary bonds, but fails to make sufficient valid assessments, or to issue sufficient bonds to provide the necessary funds to pay the contractor the contract price of his material and labor, or if it misappropriates such funds to other purposes, the corporation becomes primarily liable to pay the contract price itself."

Under the rule announced the court not only held that the city was liable where there had been a right to assess which had become lost by its negligence without any contributory conduct of the bondholder, but it went further and permitted recovery to the extent that an assessment of benefits would have been illegal from the beginning, and the rule announced would permit, and undoubtedly the court would have permitted, a recovery of defaulted bonds supportable by assessment, if there had been a defective assessment. In fact, it is under the rule that it announced, and in the cases which announce that rule, that it is said that a city is liable for delay, unreasonable delay, neglect, or refusal, to assess, collect, or pay over proceeds collected. As to what would have been apportionable against property never liable to assessment, this court has held that such part of the contract price cannot be enforced against the city. City of Enid v. Warner-Quinlan Asphalt Co., 62 Okla. 139, 161 Pac. 1092. As to that the contractor takes his chances and should ascertain the condition before contracting under statutes such as ours. We see no reason for considering that conclusion to have been erroneous, and it certainly cannot be held erroneous under a rule premised

upon conditions incapable of existence under our statutes, a general power to contract, and power to charge general revenue primarily, or at least the absence of a prohibition against holding general revenue liable. That question is not before us, but whether the rule upon which liability was grounded is applicable or capable of existing under our statutes has been drawn into question in this case.

The rule announced in the Orthwein Case, and the cases supporting it, are cases conceding a general power to contract and power to charge general revenue primarily, or lack of a prohibition against holding general revenue, and are grounded upon the creation of a liability stipulated away, and it is in those cases that it is said that a city is liable for delay, unreasonable delay, neglect, or refusal to assess, it being liable at a certain point under such conditions if the property is subject to assessment, and liable if it was never subject to assessment.

So, we are now confronted by the contention of the plaintiff that these contracts were held good in the Orthwein Case, and with a rule announced in that case under which, if it could apply under our statutes, might well be said to render a city liable to pay from general revenue under various conditions, among them being neglect, delay, or refusal to assess. If a city can be held liable where particular property was never subject to assessment, it must be grounded upon some other rule, and as to holding the city liable as to property subject to assessment, it will be seen that under statutes such as ours the remedy of the bondholder or contractor is by a proceeding in mandamus. If recovery of the amount of the bond is permitted, at least while assessments may be made or collected, it cannot be on the theory that it is the collection of a debt created by the city, for it cannot become indebted in that manner, and if recovery is permitted in a tort action, then the bond is so made a liability in the teeth of the positive provisions of the statutes.

What were the cases announcing the rule recited in the Orthwein Case as the ground of liability?

The first case cited was Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336, 340, 19 C. C. A. 139, 143. That case was bottomed upon the theory that the city had made a contract, with the power to contract to pay the contract price, and that it had by the contract attempted to stipulate away such liability. Another case cited

upon the point was Bill v. City of Denver, 29 Fed. 344. In the very first paragraph the judge who wrote the opinion said:

"As I said when this question was before me on demurrer, I have no doubt that the city had the power, under the general provisions of its ordinances, to make a direct contract with this plaintiff for his services, by which contract the city would primarily have been bound."

Another case cited was City of Leavenworth v. Mills, 6 Kan. 288, 297. The third syllabus paragraph in that case reads as follows:

"A city is primarily liable to the contractor for grading done by him, and unless the city levies a valid tax and provides some means for enforcing its collection from the lot owners, the city will still remain liable to the contractor."

And in the body of the opinion Mr. Justice Valentine said:

"The lot owners are never directly or primarily liable to the contractor for grading done by him. They are liable to the city only, **and the city is primarily liable to the contractor.** (Argenti v. City of San Francisco, 16 Cal. 255, 258, 263, 281.) When the city fails to provide any means for collecting the value of the grading from the lot owners and paying the same to the contractor, it leaves the contractor without any possible means of ever obtaining compensation for his services, except by suing the city. **The city is liable to him; and the only way the city can relieve itself from** such liability is by levying a legal tax (sec. 11, Laws 1864, p. 129) and to levy a legal tax does not in such a case mean to simply make an assessment; it means to make the assessment and also to provide some means for its collection. In this case the city did not take the necessary steps **to relieve itself from liability to the contractor,** and hence the judgment of the court below, against the city and in favor of the representatives of the contractor, for the value of the grading was correct."

Another case cited in the Orthwein opinion was Argenti v. City of San Francisco, supra, the theory of which appears in the above extract from the opinion of Mr. Justice Valentine.

Another case, City of Louisville v. Hyatt, 5 B. Mon. (Ky.) 199, 201, considered the contract as the contract of the city upon which the city could be primarily liable for the debt.

In fact, the plaintiff itself has fallen into the same failure to distinguish. It mentions Pine Tree Lumber Co. v. City of Fargo, 12 N. D. 360, 96 N. W. 357, as a case carefully considered and containing an

exhaustive review of the authorities. That case lays stress upon the difference in situation under a paving contract between the case where a city may contract primary liability and where it may not be primarily liable upon the contract. In the opinion it was said:

"As between the city and the parties with whom it contracted to furnish the labor and material to pave its streets, the city had power to render itself generally liable, notwithstanding the cost of the improvement was to fall ultimately upon the owners of abutting property. The scheme of the statute was to enable the city to make the improvements enumerated in the statute, and to reimburse itself for the costs of the same through special assessments of property abutting upon, and theoretically, at least, benefited, to the extent of the assessments, by the improvements made."

And at a later point in the opinion the court said:

"The very point we have illustrated is that the general incorporation act did not require these contractors to be paid by warrants drawn against the paving fund, or out of the paving fund at all; and the city council, who made the contract for paving, had power thereby to bind the city generally for this, among other reasons, that the law did not limit their authority in drawing warrants to the contractors to restrict their payment out of the special fund. The contract with plaintiff's assignors, though made, as all corporate contracts must be, through the agency of the city council, yet, was, when made, the contract of the city. Lansing v. Van Gorder, 24 Mich. 456. When the paving contractors, therefore, accepted warrants drawn against the paving fund, **there was no statutory requirement that they should be limited to this fund, in all events for their pay.** But in so far as they were limited, it was by the contract and acceptance of these warrants, so worded, in fulfillment thereof, and in reliance upon the implied promise of the city to promptly take the needed steps to create the fund out of which they were to be paid."

The plaintiff also cites District of Columbia v. Lyon, 161 U. S. 200, 40 L. Ed. 670, which was a case where at the request of a lot owner the assessment against his lots was not entered at once, and he conveyed them to a bona fide purchaser before the levy of the assessment, free from liability for the assessment. In the opinion the court said that the trial court had decided against the district on the ground that the law did not contemplate a direct liability of the municipality, but put upon it the duty of working out a scheme for payment, but in affirm-

ing the judgment the Supreme Court of the United States also said:

"The certificates admitted the indebtedness and postponed payment until the amount thereof could be realized from an assessment, which it turned out the district could not lawfully make, though it could have been done prior to October 2, 1871."

That clearly reduced the expression "direct indebtedness" to a meaning of mere order of payment of an indebtedness which it clearly recognized as an indebtedness of the municipality. Two of the cases cited in the opinion were decisions of the United State Supreme Court which recognized the power of the city to become contractually liable for the contract price, and treated the contract as the contract of the city in all respects—Memphis v. Brown, 87 U. S. 289, 20 Wall. 289, 310, 311, 22 L. Ed. 264, 268, and Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659. Further, in the Lyon Case there was a total loss in the absence of recovery from the district, and there was no statutory prohibition against the liability of the city.

The plaintiff contends that there is an unbroken line of authorities in the federal courts from District of Columbia v. Lyon, supra, to and including Oklahoma City v. Orthwein, supra. As to that it may be observed that the unbroken line, with the exception of the Orthwein Case, carefully points out the fact that the indebtedness is an indebtedness of the municipality and the decisions upon the numerous controversies arising out of paving projects in which it is sought to hold a city liable ex contractu are all premised upon that fact, and such basis is carefully pointed out as was done in Barber Asphalt Paving Co. v. Harrisburg, 64 Fed. 283, 29 L. R. A. 401, in the following language:

"As we have seen, the defendant had power to contract for paving its streets, at the cost of its treasury. It did not, however, so contract in terms. * * * The agreement to accept the assessments in payment relieved the city from liability to pay otherwise. * * * The defendant having failed to make the required assessments is in default upon its contract, and must make reparation by paying the consequent loss."

The plaintiff asserts that the Orthwein decision was cited and approved in Oklahoma City v. Eastland, supra. Not so; it was mentioned as a fact as the case in which the judgment had been rendered which the city undertook to take as a basis for the double assessment upon the other

property owners, which the court enjoined in the Eastland Case. The plaintiff also asserts that the Orthwein Case was recognized but distinguished in Reed v. City of Bartlesville, 108 Okla. 62, 234 P. 642. If the plaintiff means to imply that it was approved, it is in error; it was distinguished by stating what it involved after the statement that there was no analogy between the cases, and no comment was made as to its soundness or unsoundness.

(2) The plaintiff also cites Durant v. Story, 112 Okla. 110, 240 P. 84, to support the contention that the city is liable contractually. That case involved only liability for the publication of notices and ordinances in connection with a paving project the prosecution of which was enjoined after the paving contract had been let. In that opinion the Commissioner erroneously said that section 4594, C. O. S. 1921, not only provided that the cost of the paving should be assessed against the abutting property, but also provided that the publication notices would be a part of the cost of the paving. That section contains no such provision. We do observe, however, that the various sections refer not only to the cost of the paving, but also to incidental expenses incurred by the city, and it may well be that the incidental expenses could be considered a primary liability of the city under the terms of the various sections, and it is only upon that theory that the decision can be held a properly reasoned authority for recovery of such expenses, for the opinion is expressly based upon District of Columbia v. Lyon, supra; Barber Asphalt Paving Co. v. City of Denver, supra; and Bill v. Denver, supra; and upon Cole v. Shreveport, 41 La. Ann. 839, 6 So. 690, all of which are shown to be cases where the contracts were regarded as contracts of the municipality and made under laws that permitted the indebtedness sued for to be a contractual liability payable out of general revenue.

We think that the case of Durant v. Story can be sustained, not upon the theory that the cost of the notice was primarily part of the cost of paving in the sense that it was governed in all respects by the same provisions as the contract price for the paving, but on the ground that the statutes contemplated that the city should be primarily liable for the incidental expenses by the use of the phrase "incidental expenses incurred by the city." The city council has power to initiate, but the carrying out of the project can be prevented by the abutting owners by a protest after notice given by publication. The law certainly did not contemplate that the printer would not be paid in the event of protest, and did not contemplate that the notice would be printed with liability for payment dependent upon failure of the abutting owners to protest against the project. But if the printer is paid from bond proceeds, the bond cannot become a liability of the city. Durant v. Story is no authority so far as it relates to liability for the contract price of the paving or for bonds issued.

Under our statutes a city has not a general power to contract for paving, such right being vested in the owners of the assessable property; if the city owns more than one-half of it, it being necessary for the project to be approved by three-fifths of the voters voting at an election called for the purpose in compliance with section 26 of art. 10 of the Constitution. City of Lawton v. Morford, 146 Okla. 222, 293 P. 1068. The project is considered involuntary as to the city where it owns less than one-half of the land, and if private owners own more than the one-half of the land they have power by their protest to stop a project initiated by the mayor and council, and the mayor and council are required to cause the improvement to be made upon petition of owners of more than one-half of the assessable property. Sections 4591 and 4592, C. O. S. 1921.

Nor has the mayor and council power to charge the general revenue with liability for contract price. Contract price is payable by assessment, all property over which the state has legislative control, public as well as private, being subject to assessment. The only power to charge general revenue is to the extent that the amount apportionable against triangular or other irregularly shaped property exceeds the benefits conferred upon such property, and for the cost of street and alley intersections, if the mayor and council so elect, this item to be payable from general revenue or as provided in section 4550, C. O. S. 1921, which is by issuing the bonds of the city. Sections 4593, 4594, and 4550, C. O. S. 1921. Section 4550, authorizing the issue of bonds of the city, does not authorize issuing such bonds for cost of paving other than for street intersections.

For assessments unpaid 30 days from passage of the assessing ordinance, with interest and costs, the mayor and council are to provide by resolution for issuing negotiable coupon bonds, "which bonds shall in no event become a liability of the city." Sec-

tion 4610, C. O. S. 1921. The bonds must be sold at not less than par and the proceeds used to pay the contractor and the expenses incurred by the city in connection with the improvement; or bonds may be turned to the contractor at par to the amount due him, which the statute plainly denominates as payment of that amount, and bonds sold to obtain money with which to pay the incidental expenses. Id., 4611. The bonds are to be designated as "Street Improvement Bonds," and to recite that they are payable by assessment upon the property benefited by the improvement. Id., 4614. If an assessment is found invalid or insufficient for any reason, the council may at any time cause a reassessment to be made and levied. Id., 4619.

These provisions deny a general power to contract to the city, deny the power to make the cost of paving a debt of the city, except to the extent that it is specifically provided in the detailed scheme set out in the statutes, and make it mandatory, to use an old homely expression, that every tub stand on its own bottom.

It necessarily follows from the above that even if we should conclude that a city can be held liable for refusal to assess property subject to assessment, we could not reach such a conclusion upon the authority of the Orthwein decision, for in that case the rule announced as the ground of liability, a rule premised upon stipulating away a liability, is based upon premises that cannot exist under our statutes. Under our statutes there is not, and there cannot be, a primary liability to be relieved by contractual stipulation, nor can there be a debt secondarily enforceable against general revenue.

It is unnecessary to consider intermediate cases where the statutes make the assessment scheme mandatory, and do or do not otherwise restrict the general power to contract, but contain no express prohibition against liability, but only to say that it seems from an examination of the authorities that the court was correct at least where the right to assess or collect had not become lost in the case of German-American Savings Bank v. Spokane (Wash.) 47 Pac. 1103, 38 L. R. A. 259, in saying that the great weight of authority denied the right to recover from the city and limited the remedy to a proceeding in mandamus in the absence of a general power to contract for the improvement creating an indebtedness of the city. In that case the court said:

"From our investigation of the cases and textbooks, we are of the opinion that the decided weight of authority is against allowing a recovery of the city upon such matters at all, in the absence of an express lawful contract to that effect, or in cases where the money * * * is in the city treasury."

We find that the cases that allow recovery base it upon a general power to contract, and that upon conceding that a cause of action exists, while they sometimes say the plaintiff can recover the damages caused, they actually allow contract price or amount of evidence of indebtedness as a matter of course, and if they do not base the recovery upon power to agree to pay primarily from general revenue, they carefully point out the fact that the statutes do not prohibit holding general revenue liable in any event.

(3) As said above, this court has held that if any of the property specially benefited is not subject to assessment, the amount that would have been apportionable against it if it were assessable, cannot be recovered from the city. City of Enid v. Warner-Quinlan Asphalt Co., supra.

As to property liable to assessment, there is a clear intent that it shall be paid by assessment only, and the statutes are carefully drawn to prevent loss of the right, by providing that property not properly assessed may be reassessed at any time, so that in the case of neglect, delay, or refusal mandamus will always lie to force collection of the assessments in the manner provided by law, except where an injunction is obtained under circumstances where the bondholder has no notice and no opportunity to protect himself. He could there say he could not resort to mandamus, he has no bond and is therefore not enforcing a bond, but seeking merely damages actually suffered by negligence. We are not considering such a case, so we neither approve nor disapprove the Orthwein decision as to loss of bonds where the injunction was negligently suffered. As to a liability claimed to exist against the city so long as the bond still remained legally capable of supporting an assessment or an assessment could be enforced, we now disapprove the holding that there can be such a liability, either under the rule announced in that case upon which it based the liability, premises incapable of existence under our statutes, a power to contract and a stipulation, or under any other rule that can be announced. The provision that the bonds shall in no event become a liability of the city not only prevents contractual liability, but also denies the right to enforce the bond as a tort liability by

means of measure of damage. The court cannot enforce liability on the ground of any supposed equity or good conscience. The creditor's remedy is mandamus, persisted in for such time as may be required to effect the intended liquidation.

The plaintiff contends that the prohibition was merely another method of saying that the bondholder shall look to his lien against the property assessed as his security and not to the city as a comaker or a guarantor on the bonds, and that it certainly was not the intent of the Legislature to provide in detail for making such assessments a lien on the abutting property, and then by adding that the "bonds shall in no event become a liability of the city issuing the same," to allow the city willfully to refuse to follow the statute and thus make it a nullity. It does not become a nullity. It can be enforced by mandamus. The detailed scheme was to make such proceeding effective. The Legislature was looking beyond the mere matter of contractual liability. It had in mind the matter of fund liability. The plaintiff says that the words, "in any event," occurred with a different context in the case of Pontiac v. Talbot Pav. Co., 94 Fed. 65, 48 L. R. A. 326. There is some slight difference, but if they will read the following cases, they will ascertain upon what we base the statement that the words, "in any event," refer to fund liability and why we assert that it excludes liability ex delicto as well: City of Alton v. Foster (Ill.) 69 N. E. 782; Conway v. Chicago (Ill.) 86 N. E. 619; Price v. Elgin (Ill.) 100 N. E. 133; City of Pontiac v. Talbot Paving Co. (Ill.) supra; Greencastle v. Allen, 43 Ind. 347; Fletcher v. Oshkosh, 18 Wis. 228; Blain v. City of Delphi (Ind.) 139 N. E. 339; Town of Windfall City v. First Nat. Bank (Ind.) 87 N. E. 984; Moore v. Nampa, 18 Fed. 861; Broad v. Moscow, 15 Idaho, 606, 99 Pac. 101; Gagnon v. Butte, 75 Mont. 279, 243 Pac. 1085, 51 A. L. R. 966; German-American Savings Bank v. Spokane, supra. See, also, Peake v. New Orleans, 139 U. S. 342, 35 L. Ed. 131, on the importance of the general power to contract as a factor in determining liability.

In Turner v. Guthrie, 13 Okla. 26, 73 P. 283, in a suit brought to recover on warrants payable from a special fund to be derived by taxation of the property of residents only, to pay claims originating against municipalities which had been merged into the village of Guthrie, in affirming an order sustaining a demurrer to the petition alleging failure, after distinguishing cases where a city had contracted for improvements and thereby created an indebtedness against its general revenue, Irwin, J., cited with approval, among other cases, City of Pontiac v. Talbot Paving Company, supra; Greencastle v. Allen, supra; and German-American Savings Bank v. Spokane, supra; and held that the only remedy that the plaintiffs ever had was by mandamus for the neglect and refusal for nine years to make the special levy in spite of repeated demands.

In Oklahoma City v. Derr, 109 Okla. 192, 235 P. 218, cited in the plaintiff's brief, the liability only covered the assessment against the city's own property, and the explanation of recovery is that the law does not contemplate the sale for taxes of public property, so the case enforced nothing but payment of the city's own taxes.

See generally on the matter of legislative intent with reference to paving statutes: City of Enid v. Warner-Quinlan Asphalt Co., supra; MacKenzie v. City of Anadarko, 72 Okla. 90, 178 P. 483; City of El Reno v. Cleveland-Trinidad Paving Co., 25 Okla. 648, 107 P. 163, and Beggs v. Kelly, 110 Okla. 274, 288 P. 466.

We have read the Reilly Case, cited in the plaintiff's reply brief and in the Orthwein opinion, Reilly v Albany, 112 N. Y. 30, 19 N. E. 508, which is the leading case from which statements as to measure of duty are quoted. The court there said that for omission the city would be liable for such damages as the contractor might suffer by reason of the neglect of duty. It is to be observed, however, that in that case recovery of the debt as a debt was permitted upon the contract, what was recovered was contract price, and the duty discussed was plainly described as the duty to take the required steps to pay the city's obligations. The Reilly Case was based upon Cumming v. Brooklyn, 11 Paige (N. Y.) 596, in which the court said:

"And there is nothing in the charter which prohibits the corporation from entering into general contracts for making such improvements. The assessment of the expense, as a local tax, is not ever a restriction upon the power of the corporation so as to require it to contract only for payments out of that particular fund. But this local tax is a fund which has been provided * * * to reimburse the corporation for the expenses of an improvement which it has either paid or become liable to pay."

The Reilly Case is the leading case upon which decisions supporting a tort liability rely.

The Oregon case which is the leading case

on tort liability was Commercial National Bank v. City of Portland, 38 P. 533, designated as an action for damages because of the nonpayment of certain warrants issued by defendant city upon a special fund. That was also a case of stipulation for relief and was cited in the Orthwein Case. Lord, C. J., after stating the facts, said:

"The principal question in this case is whether the city is liable for the payment of the warrants in question in view of the stipulation requiring the contractor to look to a special fund for payment, and **undertaking to exempt the city from general liability.**"

He then cited the Reilly Case and after stating that there was no privity between the contractor and the property owners and that he had no lien or claim against the property, and could exert no control over the acts of the city, the opinion holds the city liable and then cites Cumming v. Brooklyn, supra. The case cites the cases of contractual liability, and then practically holds that the contractor has no remedy if he cannot recover from the city. Neither premise is sound, at least under our statutes, and here again tort liability moves back upon the cases of contractual liability.

Beard v. Brooklyn, 31 Barb. (N. Y.) 142, is the only case we have found where the court took the position that the common council had no general power to contract and acted as agents of the landowners and did not represent the city in contracting, and yet held the city liable for contract price for delay or refusal in assessing or collecting in a tort action. The opinion is rambling, and its chief basis seems to be the assumption that the plaintiff had no other remedy, an assumption rebutted by an overwhelming line of authorities in New York holding that for delay mandamus is the proper remedy. The intimation in the New York cases that perhaps an action on the case would lie is traceable to a consideration originally of whether the particular officers charged with the duty would be liable, and the case which is the basis of the later intimation specifically held that they were of the opinion that an action would not lie against them. People v. The Supervisors of Columbia, 10 Wend. (N. Y.) 363. If a tort action would lie, allowing recovery of a bond still enforceable would assess damage not sustained, which is contrary to authority. Hupe v. Sommer, 88 Kan. 561, 129 P. 136, 43 L. R. A. (N. S.) 565; Dow v. Humbert, 91 U. S. 294, 23 L. Ed. 369. And it would be prevented in Oklahoma anyway

by the prohibition against the bonds becoming in any event a liability of the city.

In its reply brief the plaintiff quotes from Dillon on Municipal Corporations, and it seems evident that Mr. Dillon is of the opinion that the contractor or creditor should not be unduly delayed. They say that Mr. Dillon cited the case of Alton v. Foster, supra, as falling under the minority rule. It was cited under the statutory rule where the statute denied liability in any event. These cases that discuss the denial of liability in any event have no trouble in concluding that the Legislatures deliberately made the provisions sufficiently drastic to prevent the general revenue being held liable through ignorance, mistake, inattention, collusion, or corruption. The writer has no difficulty in concluding that the history of the making of such improvements in this country well warranted provisions of the most drastic character to effect such end. This court cannot pare down the prohibition, so it cannot allow a bond as a debt or as a measure of damages, at least so long as it remains valid and enforceable as provided by law, and there seems only to be one situation where it would not remain valid and enforceable, where the assessment is enjoined, and as to that situation we express no opinion as to liability for negligence, if any should exist and the bondholder has had no opportunity to protect his rights.

(4) We might well have said that even if there could be a liability on the bonds, it would not follow that there could be such a liability as the plaintiff here claims, liability alleged to be for damages claimed to be due to loss sustained by depreciated market value at the time when the plaintiff became divested of title to the bonds. But the plaintiff seemed to think that it must establish liability for contract price as an essential step in the argument to the liability claimed, and it relied upon the Orthwein decision as a strong authority for its position, and not only the plaintiff has asserted that this court has approved the decision, but the same claim is made by the annotator who annotated paving decisions in notes appearing in 38 A. L. R., pp. 1271 to 1306, and in 51 A. L. R., pp. 973 to 975, so we felt it high time to emphatically deny that a paving bond can be enforced either by an action ex contractu or ex delicto, which entailed a severe but wholly necessary criticism of that decision.

Passing now to the matter of the particular liability here sought to be enforced, the

192

answer is that the plaintiff is seeking to recover for a loss that the Legislature never intended that it should be protected against, that suffered on transfer of title to the bonds. If a reading of the contract discloses that it was within the contemplation of the contracting board that the bondholder might voluntarily or involuntarily part with title to the bonds and might thereby suffer a loss, and that the loss would be augmented by dereliction in duty which might have depreciated the market value of the bonds, the answer is that the contracting body had no right to contemplate such a measure of damage, or any damage whatever, that might result from the transfer, for there was no authority to provide against such manner of loss. The intent of the law was to effect liquidation of the bonds in a contemplated manner. There was no right to contract as an individual might or would contract. There was no power to create any liability against the revenues of the city. Such a power would speedily bankrupt every municipality in the country. It does not seem at all strange that no authorities were produced in support of the contention, and certainly authority would not be required to rebut it. A search for authority would have dignified the contention; but, strange to say, in considering a case upon another point, in reference to the soundness of the Orthwein Case, we accidently stumbled upon a denial of practically the identical contention. In Memphis v. Brown, supra, the court stated that the cause of depreciation in market value and the extent to which it was caused, was highly speculative, which was very apt in this case, because it appears that the stockholders in the plaintiff company, who were worth in excess of several hundred thousand dollars, permitted the bonds, held as security for a comparatively small debt, to be sold at 30 per cent., when the amount involved in the alleged invalid assessment of railway company right of way was only about 20 per cent. of the amount of the bonds, taking an alleged loss of over 50 per cent., which was a peculiar circumstance and would cause one to wonder how much, if at all, any depreciation in market value might have been due to the fact clearly shown by the record that, regardless of whether it was the city or the contractor who was to blame, there having been an issue as to that, but none as to the quality of the paving, the paving was exceedingly poor and short-lived in character. Then, getting to the very question of the validity of the claim of one who had parted with title to the bonds for damages alleged to have been caused by failure to provide a sinking fund, in discussing what would have been the situation if the contract had bound the city to provide such a fund, the court said:

"They negotiated the bonds. They negotiated the coupons. These securities are still outstanding against the city. Whatever claim there may be for a sinking fund, or for damages for the want of it, would seem to belong to the holders of the bond, and not to the party to whom issued. The right to a fund for redemption of a bond to enforce it by mandamus, or to ask damages for its violation, is an incident of the bond, attached to and inseparable from it. Tracy v. Talmage, supra; Oneida Bk. v. Ontario Bk., 21 N. Y. 490. There cannot be a cause of action in one to recover the whole face of the bond and interest, and in another to recover damages for the want of a collateral security to the bond. The allowance of damages now to Brown & Co. will be no defense to a claim for the whole face of the bond, to be made by the holder of it. The city would thus be liable to pay the face and interest of the bond to the holder after having paid 28 per cent. to Brown & Co. for the absence of a guaranty of the payment of the same bond. This cannot be sound law."

The argument applies as against the claim here asserted, and is as sound when applied to a situation where the city cannot be liable to pay the bond as it is where the city is so liable, and the argument makes it immaterial that the parties by their recitals indicate that they looked ahead to just such a contingency as actually occurred. The statutes were not designed to protect against loss of title to the bonds.

Any attempt to contract with reference to a consideration of what damages might be sustained on a transfer of the bonds, voluntary or involuntary, was undoubtedly ultra vires.

Judgment affirmed.

CLARK, V. C. J., and RILEY, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and HEFNER, J., absent.