**ROSE BROTHERS, INC., a corporation, Plaintiff in Error,**

v.

**CITY OF ALVA, a municipal corporation, Defendant in Error.**

No. 38812.

Supreme Court of Oklahoma.

Nov. 9, 1960.

**1084** 

John B. Doolin, Alva, for plaintiff in error.

Richard R. Downer, Herbert D. Smith, Alva, for defendant in error.

JACKSON, Justice.

In this action, plaintiff, Rose Brothers, Inc. seeks to recover the cost of 144,962.5 gallons of oil used in the construction of a street improvement in the city of Alva by plaintiff and a subcontractor in excess of the amount specified in a written contract with the defendant city. Subsequent to the award of the contract to plaintiff, it assigned and subcontracted the laying of the soil-asphalt base to Harrison-Wilson Company, of Eldorado, Kansas, plaintiff reserving the concrete curb and gutter portion. The action is grounded upon the theory that the defendant city converted the extra oil "by requiring and ordering plaintiff and subcontractor to complete said paving district," as alleged in the amended petition, all to plaintiff's damage in the sum of $21,744.37.

At the time plaintiff submitted its proposal to the city, plaintiff excepted to certain provisions of the specifications, and entered its bid subject to the following, to wit:

"That if in the opinion of the City Engineer additional asphalt is needed to insure construction according to intentions of Specifications, the contractor shall be allowed an additional sum of 15¢ per gallon as an extra, for asphalt delivered and mixed over and above the limit set forth in the specifications, (not in excess of three (3) gallons per square yard)."

It is conceded by defendant city that the above provision was mutually agreed upon.

At a pre-trial conference between plaintiff and defendant, it was stipulated and agreed by the parties that the asphalt, oil or petroleum derivative for which plaintiff seeks payment had been deposited upon the streets comprising said paving district. Some of the evidence developed at the trial tended to show that city employees using city trucks removed asphalt from the common mixing area and used it to patch streets outside as well as inside the paving district. The amount of asphalt used outside the paving district was not established, and appeared to be negligible. We consider that such evidence was introduced for the sole purpose of bolstering plaintiff's theory of conversion.

 At the conclusion of plaintiff's evidence, the trial court sustained defendant's demurrer to plaintiff's evidence and entered judgment for the defendant city, from which plaintiff appeals. Hence the immediate question is whether plaintiff's evidence, construed in the most favorable light to plaintiff, entitled plaintiff to any relief. Colorado Interstate Gas Co. v. Wheeler, Okl., 344 P.2d 1055.

Harold Wilson, president of the subcontractor company, testified that he was actively engaged in the work on the street improvement district and was on the job about eighty per cent of the time; that the oil used was ordered from Anderson-Prichard and shipped to the city of Alva; that the city of Alva directed him to place the oil on the streets; that the mayor and city clerk were present at numerous times when it was being put on the streets.

The city clerk testified, as follows:

"Q. The city has acknowledged there would be some excess oil needed in this particular district from the very inception of the whole contract since this is the very first thing they ever heard from any bidder? A. Yes."

Everett L. Rose, president of plaintiff corporation, testified that the extra oil in question was used in paving district No. 43; that he had a conversation with the city clerk on October 1, 1957, and with the city engineer before the final estimate was made; that the city knew that the oil had gone into the paving district.

On January 21, 1957, the city engineer submitted its final estimate of the cost of the entire project at $98,736.62 (apparently pursuant to 11 O.S.1951 § 96) and in the last paragraph of its letter added the following:

"In addition to the above, 144,962.5 gallons of oil, in excess of 3 gallons per square yard, were used, to be paid for at an agreed price of $0.15 per gallon.

144,962.5 gals. Oil @ 0.15 $21,744.37

"Total Amount Due Contractor $120,480.99"

Thereafter the governing body of the city approved the cost of the improvement as estimated by the city engineer but took no action on item of excess oil in the sum of $21,744.37. The plaintiff filed its written protest with the board because of the omission of the $21,744.37, which was denied. Later, upon the advice of its attorney plaintiff let the matter go through so that the appraisers could apportion the benefits to the several lots and tracts of land benefited by the improvement, and in order that bonds might be issued in the approximate sum of $98,736.62. Plaintiff was paid the contract price of the improvement, as adjusted.

We agree with plaintiff in error's contention that a city may be liable for conversion under certain circumstances; however, we think the cases cited by plaintiff in error are distinguishable on the facts.

In Selected Investment Co. v. City of Lawton, Okl., 304 P.2d 967, and Wichita Finance & Thrift Co. v. City of Lawton, D.C., 131 F.Supp. 788, plaintiffs had installed water systems in a residential area under an agreement with the city that the systems would be connected to the city water system and plaintiffs would be reimbursed for the cost of same by means of fees collected from the consumers. Later the city repudiated its agreements and refused to pay plaintiffs' claims for the cost of the water system, while wrongfully asserting ownership of or dominion over the systems.

In the instant case we find no evidence of an unauthorized assumption or exercise of right of ownership over the oil in controversy. Under the evidence, all of the asphalt for the district was mixed in one area, and although city employees assisted in mixing and applying asphalt to the streets, such acts of the city were with the knowledge and consent of plaintiff by and through its agents and employees.

In 89 C.J.S. Trover and Conversion § 1 (headnote) appears the following:

"Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."

and, in Section 5, supra: 89 C.J.S. Trover and Conversion § 5.

"In order to constitute conversion, nonconsent to the possession and disposition of the property by defendant is indispensable. * * *"

In Oklahoma Farmer's Nat. Grain Corporation v. Kirkendall, 183 Okl. 17, 79 P. 2d 570, we held that if the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover as for a conversion thereof.

We are of the opinion that the most that can be said for plaintiffs' evidence in this connection is that plaintiff consented to the taking or use of the oil or asphalt by the city with the expectation that the city would pay for same as extra materials furnished under the contract. The oil was not wrongfully taken without plaintiffs' consent. The acts of the city did not constitute conversion.

Regardless of the theory on which this action was brought, it is in essence an action to recover the cost of materials furnished by plaintiff or plaintiff's subcontractor in excess of the contract specifications.

Title 11 O.S.1951 § 83 et seq., prescribe the procedure to be followed by a municipality in paving projects. Section 83 provides that a preliminary estimate of

the total cost of such improvement shall be prepared by the municipal engineer, together with a plat showing the area to be assessed. Section 85 requires the publication in a weekly newspaper of the resolution approving the plans, plats, preliminary estimate, etc.; and that the owners of the assessable land may file protests against such project. Section 88 authorizes the governing body of the municipality, when requirements are met, to require the owners of all property subject to assessment to pay the cost of such improvement. Section 89 provides that after expiration of the time for protest, or if insufficient protests be filed, the governing body of the municipality shall adopt a resolution requiring the municipal engineer to submit and file detailed plans, specification and estimates of probable cost, and that if said documents are found satisfactory shall by resolution adopt and approve the same. Such resolution shall direct the municipal clerk to advertise for sealed proposals in a newspaper published in the county.

Section 90 directs the governing body of the municipality to award the contract to the lowest and best bidder, "the aggregate amount of which contract shall not exceed the aggregate estimate of cost submitted by the engineer for the improvement, *and in the event of any excess in cost over said engineer's estimate, such excess shall be void and no assessments for such excess levied;* * * *."

In Morrow v. Barber Asphalt Paving Co., 1910, 27 Okl. 247, 111 P. 198, it was held under a similar prior statute that a contract for a price exceeding the estimate was void.

In Smith v. City of Tahlequah, 145 Okl. 103, 291 P. 981, we held that a city was not liable to a contractor for labor and material furnished under a contract in an amount in excess of the engineer's estimate therefor. At page 985 of the Pacific Reporter, we said:

"When it was established and shown at the trial of the cause, as was done, that the defendant city had paid to the plaintiffs on the contract an amount equal to the engineer's estimated cost of such work, then upon such showing and fact plaintiff was not entitled to recover any further sum, and judgment should have been entered accordingly."

The casemade in the instant case does not contain copies of the engineer's estimates presumably filed in accordance with sections 83 and 89, prior to publication of the resolutions and notices as provided therein.

 The applicable statute provides that the cost of paving improvements shall be borne by the owners of the property subject to assessment (11 O.S.1951 § 88). A city has no general power to contract for paving, as such right is vested in the owners of the assessable property. Liberty National Bank v. Excise Board of Jefferson County, 175 Okl. 245, 52 P.2d 51; Severns Paving Co. v. Oklahoma City, 158 Okl. 182, 13 P.2d 94.

In City of Enid et al. v. Warner-Quinlan Asphalt Company, 62 Okl. 139, 161 P. 1092, the contractor brought action against the city to recover $6,467.68 as damages for breach of a street improvement contract entered into by said parties. Recovery was sought directly against the city, on the ground that part of the tax assessments contracted to be delivered in payment of said work was against property of the United States and hence nonenforceable.

In reversing judgment for plaintiff, we said, at page 1093 of the Pacific Reporter opinion:

"We are of the opinion that the city was without authority of law to contract for the work to be done under said contract and to pay for the same other than in the manner provided by the contract sued upon."

And at page 1095:

"The prayer of the petition prays judgment only against the city, and, in our opinion, the petition in this case fails to state a cause of action against the city, and the court committed prejudicial error in overruling the demurrer to the said petition."

In the first paragraph of the syllabus, we said:

"A contractor is charged with knowledge of the law under which a contract for paving streets of a city may be entered into, and one who contracts to pave the streets of a city, in consideration of receiving assessments against abutting property of the streets paved, in payment of such paving, should, prior to entering into such contract, ascertain whether or not such assessments are enforceable, and upon failure to do so acts at his peril."

We conclude that the plaintiff's evidence does not entitle plaintiff to any relief against the defendant city. The trial court correctly sustained defendant's demurrer to plaintiff's evidence.

Judgment affirmed.