## AMERICAN-FIRST NATIONAL BANK v. PETERSON.

No. 22547. Dec. 4, 1934.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

C. H. Thomason, for defendant in error.

SWINDALL, J. This action was brought by the defendant in error, as plaintiff, in the district court of Garvin county, against the plaintiff in error, American-First National Bank of Oklahoma City, the county treasurer of Garvin county, and the city clerk of the city of Pauls Valley, as defendants, seeking to cancel a special sewer tax warrant, remove any cloud from his title caused by the levy of an assessment, and perpetually enjoining the county treasurer from selling plaintiff's property to satisfy said tax warrant, and enjoining the city clerk from certifying the said tax to the county treasurer. For convenience the parties will be referred to as in the lower court, the plaintiff in error as defendant and the defendant in error as plaintiff.

There is no material controversy as to the facts. It appears that the governing body of the city of Pauls Valley, on June 6, 1921, passed ordinance No. 189, establishing a sani-

tary lateral sewer district, providing for the construction of sanitary sewers in said district, and directing the city engineer to prepare profiles, maps, and specifications, directing the advertising for bids, and authorizing the letting of a contract for the construction of such sewers. It appears that the contract was let and the sewer constructed, and thereafter, on December 12, 1921, ordinance No. 194 was passed by the city board of commissioners, assessing the various lots in said district for the cost of the construction of said sewer. Among the various other lots assessed, they assessed the property of the plaintiff, W. B. Peterson, the same being lot 1 in block 204, for the sum of $83.77, and issued a tax warrant against said property to some person unnamed in the record, and said tax warrant was afterwards assigned to the defendant, the American-First National Bank of Oklahoma City, who appears to be the present owner thereof.

The plans and specifications for said sewer system, although referred to by both parties in their brief, were not introduced in evidence and are not in the record, and we are unable to ascertain the location of the sewer line provided by the specifications as to the streets and alleys in said district. From the first ordinance, ordinarily known as the "Ordinance of Necessity", it appears that a part or all of the lots in some nine blocks were included in the district; that block 204, in which the plaintiff's lot is located, is 600 feet long and 130 feet wide, containing six lots of the width of 100 feet each, and plaintiff's lot is the north lot of this block. Immediately west of the block is a narrow alley 13.7 feet wide at the north end of the block and 12.6 feet wide at the south end of the block. Immediately west of this alley are the city limits and a tract of land outside the city limits belonging to one Vaut. When the sewer line was laid west of this block, it was for some reason laid on the private property of the said Vaut and some 8 1/2 feet west of the city limits. The records do not disclose whether this was in accordance with the plans furnished by the city engineer or by error of the contractor. At any rate, this leaves a narrow strip of land approximately 8 1/2 feet wide intervening between the sewer and the alley, adjacent to plaintiff's property. It appears that the tax warrant remained unpaid for a period of more than seven years, and on September 19, 1929, the plaintiff filed this suit.

The case was tried before the court, and at the close of plaintiff's evidence the defendant filed a demurrer to the evidence, which was by the court overruled. Defendant offered no evidence except certified copies of the two ordinances of the city of Pauls Valley. The court thereupon rendered judgment against the defendants, quieting plaintiff's title against all liens and clouds by reason of said assessment and the issuance of said tax warrant, perpetually enjoining the county treasurer from advertising or selling plaintiff's property to enforce payment of said tax warrant, and rendered judgment against deefndants for costs. The defendant, the American-First National Bank, brings the case to this court on appeal.

The defendant, in its brief, confines the argument to two propositions, as follows:

(1) The alleged cause of action asserted by the plaintiff is barred by the statute of limitations.

(2) The alleged cause of action asserted by the plaintiff is barred by his own laches in failing to assert his rights, if any, until more than seven years after the passage of the assessing ordinance.

The plaintiff in his brief insists that the assessment and special sewer tax warrant issued against his property is wholly void, and that consequently no statute of limitations will run against his action to enjoin the collection of such tax warrant. The statute of limitations which defendant seeks to invoke is section 4408, C. O. S. 1921 (6053, O. S. 1931), the pertinent wording of which is as follows:

"No suit shall be sustained to set aside any assessment or certificate issued in pursuance of any assessment or to enjoin the city counsel or town board from making any improvement, unless brought within 60 days after the passage of the ordinance making such assessment."

This section is a part of chapter 29, article 3, C. O. S. 1921, having application exclusively to establishment of sewer systems and construction of sewers in cities and towns. Article 12 of the same chapter contains, in section 4619, C. O. S. 1921, an almost identical provision limiting the time within which to bring suits to set aside assessments for paving or other street improvements and to enjoin the levying and collecting of such assessments, the pertinent provisions of which are as follows:

"No suit shall be sustained to set aside any such assessment, or to enjoin the mayor and council from making any such improve-

ment, or levying or collecting any such assessment, or installment thereof, * * * unless such suit shall be commenced not more than 60 days after the passage of the ordinance making such final assessment."

These two sections have been construed by this court many times, and we have consistently held that:

"The 60-day statute of limitations provided in said act applies to suits involving irregularities in procedure, but does not apply to jurisdictional defects rendering the proceedings void."

See Grier v. Kramer et al., 62 Okla. 151, 162 P. 490; Berryhill et al. v. City of Sapulpa, 97 Okla. 65, 222 P. 555; Morrow v. Barber Asphalt Paving Co., 27 Okla. 247, 111 P. 198; Flanagan v. City of Tulsa, 55 Okla. 638, 155 P. 542; City of Muskogee v. Nicholson, 69 Okla. 273, 171 P. 1102; Southern Surety Co. v. Jay, 74 Okla. 213, 178 P. 95; City of Enid v. Gensman, 76 Okla. 90, 181 P. 308; St. Louis-S. F. Ry. Co. v. City of Wetumka, 136 Okla. 64, 276 P. 226.

Applying this well-established rule, it clearly appears that if the assessment levied against plaintiff Peterson's property and the special sewer tax warrant issued pursuant thereto and now held by the defendant, American-First National Bank, are void, then the statute of limitations will not apply, and plaintiff is entitled to prevail. This is the sole question. Is the assessment void, or are the matters complained of by plaintiff mere irregularities?

From ordinances Nos. 189 and 194 of the city of Pauls Valley, introduced in evidence, it appears that the board of commissioners of the city proceeded under the provisions of section 4405, C. O. S. 1921 (6050, O. S. 1931), to establish a sewer district and let a contract for the construction of a sanitary sewer, and under the provisions of section 4406 they assessed the property in said district to pay the costs of said construction. These sections are as follows:

"4405. Letting contract for district sewers. Whenever the mayor and council or the board of trustees shall deem any district sewer necessary, they may without the petition hereinbefore provided for proceed with such work and shall cause to be prepared sections, profiles and specifications for the work, together with a complete estimate of the costs. And the mayor and council or the board of trustees shall have the power to adopt any material or methods for the construction of such sewers and to have such plans prepared in accordance with its directions as to the kind of material used. Upon the completion of the plans and specifications and their adoption by the mayor and council or the board of trustees, they shall advertise for sealed bids for the performance of such work, for at least ten days if published in a daily newspaper, or at least two weeks if published in a weekly newspaper, which paper shall be of general circulation in the city, and which notice may contain any reasonable conditions to be imposed by the mayor and council or the board of trustees with reference to the letting of such contract, and may require the giving of a good and sufficient bond for the faithful execution of the work, and for the protection of the city and all property owners against any loss or damage by the negligent execution of such work. The notice shall also advise all parties interested that they may appear and protest against said proposed improvement, or any part thereof. At the time and place specified in the notice, the mayor and council or the board of trustees shall, if they find such improvement necessary and proper, award the contract to the lowest and best bidder for the work, which contract shall in no case exceed the aggregate estimate of costs submitted with the plans and specifications, and shall be subject to the right of the mayor and council or the board of trustees to reject any and all bids and to re-advertise for other bids when none of the same are. in their judgment. satisfactory: Provided, that where a majority of the property owners in any block petition the mayor and council or the board of trustees for a lateral sewer through or in such block, the advertising for bids shall not be necessary, but the mayor and council or the board of trustees may cause such improvement to be made without such notice.

"4406. Assessment for district sewers. As soon as any district sewer shall have been completed, the city or town engineer or other officer having charge of the work shall compute the whole cost thereof, which shall also include all other expenses incurred by the city or town in addition to the contract price of the work, and shall apportion the same against all of the lots or pieces of ground in such district, exclusive of improvements, in proportion to the area of the whole district, exclusive of the public highways. and such officer shall report the same to the mayor and councilmen, and the mayor and councilmen or the board of trustees shall thereupon levy and assess a special tax, by ordinance, against each lot or piece of ground within the district, which ordinance shall be published in some newspaper of general circulation in the city for four consecutive weeks. and if, at the expiration of such time, the amount named in such ordinance. together with the cost of publication. shall not be paid, then the mayor and councilmen. or the board of trustees. shall cause tax warrants to be issues against such lots and pieces of ground

in said district, which tax warrant shall recite the date of the passage of the ordinance making the assessments, the amount of the assessment, the description of the property against which the same is levied, and that the same will be levied against said property in three equal installments with interest thereon at the rate of eight per cent. per annum, levied each year, to become due on the 15th day of December next after each such levy, to pay the maturing installments; and said tax warrants shall be signed by the mayor or president, as the case may be, countersigned by the city or town clerk, and delivered to the contractor: Provided, that the aggregate amount of such warrants delivered to the contractor shall not exceed his contract price, and the municipality shall hold and retain for its own indemnity a sufficient amount of the same to cover other expenses than the contract price of executing the work."

Section 4401, C. O. S. 1921, being a part of this same article, is also important in arriving at the rights of the parties. The same is as follows:

"4401. Payment for public sewers. Except as herein otherwise provided, the construction and maintenance of public sanitary sewers and storm sewers in cities and towns shall be paid for as follows: Mains and submains, of whatever size or extent, shall be paid for by the city or town; laterals shall be paid for by the owners of the property abutting on such laterals, in the manner provided by law for the estimate of cost and assessments for district sewers: Provided, that where, for the purpose of better drainage, or for other reason, a main or submain shall be constructed in any alley or other place where otherwise a lateral would have been constructed, and where such main or submain serves the purpose of a lateral for the property abutting thereon, the owners of such property shall be assessed in amounts equal to that which they would have been required to pay for a sufficient lateral; and that where, for any reason, any private connection is made with a main or submain, instead of with a lateral, the owner of the premises so connected shall pay to the city or town an amount equal to that which he would have been required to pay for a lateral so constructed as to provide similar service; such amounts to be charged for connections with mains and submains or for mains and submains used as laterals to be ascertained by the city or town engineer, or the engineer in charge of such work, and assessed against the property and collected in the manner provided by law in the case of district sewers."

It will be noted that this section provides that lateral sewers "shall be paid for by the owners of the property abutting on such laterals in the manner provided by law for the estimate of costs and assessments for district sewers."

The rule of construction for such statutes has been aptly stated in 44 Corpus Juris, p. 492, sec. 2822, as follows:

"Since municipalities have no power to levy special assessments for public improvements in the absence of statute conferring the power either expressly or by necessary implication, the extent of the power and the manner of its exercise are to be determined solely by the legislation conferring the power."

The rule, as stated by this court in the case of Pauls Valley National Bank v. Foss, 99 Okla. 178, 226 P. 567, in the first syllabus paragraph thereof, is as follows:

"Since the power of a municipality to levy special assessments depends on express provisions of charter or statute, the extent of such power and the manner of its exercise is to be determined by the construction of the charter or statute. The grant of power is to be strictly construed as against the city."

To the same effect is M., K & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 P. 328, and St. Louis-S. F. Ry. Co. v. Wetumka, 136 Okla. 64, 276 P. 226.

Inasmuch as the statute expressly provides that such lateral sewers shall be paid for by owners of property abutting on such laterals, it necessarily follows that assessments for such improvements cannot be made against property except that abutting on such lateral sewers. This court has not heretofore construed the word "abutting," as used in this particular section of the statute, but has construed the word as used in other similar statutes. In the case of Oklahoma Ry. Co. v. Severns Paving Co., 67 Okla. 206, 170 P. 216, wherein the court was construing the statute in regard to the paving of streets, this court, in the body of the opinion, said:

"By the term 'fronting and abutting,' as used in the statute, is meant that between which and the improvement there is no intervening land. 24 Am. & Eng. Ency. Law (2d Ed.) 1190; Millan v. City of Chariton, 145 Iowa, 648, 124 N. W. 766."

This seems to be the general definition of this term, as laid down in many other cases and by standard text-writers and encyclopedias.

In the case of City of Wilburton et al. v. McConnell et al., 119 Okla. 242, 249 P. 708, this court had under consideration the provisions of section 21, chapter 173, of the Session Laws of 1923, providing the manner

of levying assessments for paving. A part of said section is as follows:

"If any of the property abutting upon such improvements shall not be platted into blocks, the governing body shall include such property in proper quarter block districts for the purpose of assessment and appraisement, as provided herein, based upon the division of such property into blocks 300 feet deep measured from the outer boundary of the abutting street."

It appears that the lots on the south side of the street to be paved were only 100 feet in length, and the unplatted right of way of the railway company joined the lots on the north, and, quoting from the body of that opinion:

"The contention of appellants is that they are authorized to extend the south blocks 200 feet over the right of way of the Chicago, Rock Island & Pacific Railway Company, and include 150 feet of the length thereof in the assessment district. The statute does not authorize the extension of abutting platted lots and blocks over unplatted property for the purpose of assessment for the improvements. The statute refers to abutting unplatted property in every instance."

After quoting from the case of the Oklahoma Railway Co. v. Severns Paving Co., supra, the court further said:

"The term 'abutting property owner,' as used in the language of our statute as defined by this court, excludes the property of the Chicago, Rock Island & Pacific Railway Company from assessment for any part of the cost of the proposed improvement."

In the case of the Town of Salem v. Henderson, 41 N. E. 1062, the Appellate Court of Indiana, construing a statute which was by no means as plain and direct as our statute, said:

"We think that it is plain from the reading of the section cited that it was intended that only that part of the abutting property should be assessed which fronts on the portion of the street actually improved. Statutes authorizing the assessment of property for public improvements are to be strictly construed. The statute cannot be extended or added to in order to make the liability greater than is authorized by the plain letter thereof. Hence, when it requires the engineer to estimate only the cost per running front foot of 'that part of the street so improved,' etc., it would be enlarging both the letter and the spirit of the statute beyond its original scope to include in such estimate, and consequently in the assessment, property abutting on any part of the street not improved."

Applying these rules, it clearly appears that plaintiff's property cannot be construed to be "property abutting on such laterals." If the sewer line was in the alley, the lot would, of course, be construed to be abutting thereon (Byram v. Foley [Ind.] 47 N. E. 321), but in the instant case the strip of land of Vaut, approximately 8-½ feet wide, intervenes between the alley and the sewer line. The lot of the plaintiff, therefore, does not abut on the sewer line, and under the sections of the statute authorizing the construction of sewers and assessments therefor, it cannot be assessed to pay any part of the cost thereof.

Plaintiff cites the case of Pauls Valley National Bank v. Foss, supra, and defendant insists that this case has no application and seeks to distinguish the section of the statute authorizing the construction of sidewalks from section 4406, supra, providing the manner of the assessment for sewer lines, and calls attention to the fact that section 4406 provided that all lots within the sewer district shall be assessed in proportion to the area of the whole district. There would appear to be merit in their contention if section 4406 were construed alone, but it must be construed in connection with section 4401, supra, which expressly provides that the lateral sewer "shall be paid for by the owners of property abutting on such laterals." Undoubtedly, the Legislature could have provided for the assessment of all lots benefited by the sewer line, regardless of whether or not they abutted on such sewer, but the Legislature did not so provide, and we must construe the law as we find it. As the Legislature did not grant power or authority to the city to levy any assessment for the construction of such sewers against property which did not abut thereon, the city was wholly without power to do so, and the assessment is therefore void. The assessment being void, the statute of limitations has no application.

The rule as to laches does not apply, as there is no evidence in the record indicating that any damage has resulted to defendant by reason of the delay of plaintiff in bringing this action. Cassidy v. Gould, 86 Okla. 217, 208 P. 780; Indian Land & Trust Co. v. Owen, 63 Okla. 127, 162 P. 818; City of Muskogee v. Nicholson, 69 Okla. 273, 171 P. 1102.

The rule is well established in this jurisdiction that in purely equitable actions, this court on appeal will examine and weigh the evidence, but will not reverse the judgment because of the insufficiency of the evidence

unless it can be said that it is against the clear weight thereof. Cossota v. Hirsh, 158 Okla. 229, 13 P. (2d) 131; Chambers v. Investors Syndicate, 154 Okla. 142, 10 P. (2d) 389.

From a careful examination of the entire record, it appearing that the judgment of the trial court is not against the clear weight of the evidence, the judgment is affirmed.

ANDREWS, McNEILL, OSBORN, and WELCH, JJ., concur. RILEY, C. J., CULLISON, V. C. J., and BAYLESS and BUSBY, JJ., absent.