Fred W. MARTIN, Trustee, Plaintiff in Error,

v.

The BOARD OF COUNTY COMMISSIONERS OF WAGONER COUNTY, Oklahoma, et al., Defendant in Error.

No. 40527.

Supreme Court of Oklahoma.

Dec. 15, 1964.

**646**

Fred W. Martin, Wagoner, for plaintiff in error.

John W. Russell, Jr., and Earl Youree, Wagoner, for intervenors.

### WILLIAMS, Justice.

The question involved herein is whether additional and supplemental assessments may be levied on lands within a drainage district after prior assessments have proven to be insufficient to satisfy a judgment rendered against the district in an action in which the landowners were not parties. Our answer is, they may not.

On October 13, 1960, Fred W. Martin, Trustee, hereinafter referred to as plaintiff, filed cause No. 12,692 in the District Court of Wagoner County against The Board of County Commissioners, the Excise Board, the County Treasurer and the County Clerk, all of Wagoner County, hereinafter referred to as defendants. Plaintiff's petition is as follows:

"Comes now the plaintiff and for cause of action against said defendants, alleges and states:

"That on the 13th day of April, 1946, in Cause No. 10561, the Trustees of the Verdigris Drainage District recovered judgment in the amount of $10,558.54, with interest thereon at 6% per annum from November 28, 1944.

"That of this amount, payment has been received in the amount of $8,111.61, leaving a balance due on said judgment of $2,446.93, with interest thereon at 6% per annum from November 28, 1944.

"That the County Commissioners are failing and refusing to make a levy to pay the balance of said judgment.

"WHEREFORE, Plaintiff prays that said defendants be required to make sufficient levy hereon to pay the balance of said judgment."

A "Notice of Hearing Mandamus" on October 25, 1960, was served individually on each of such defendants. On October 10, 1960, judgment (peremptory writ of mandamus) was entered by the trial court pursuant to plaintiff's prayer. Subsequently various landowners within the drainage district requested and were granted permission to intervene and later filed their petitions of intervention. Thereafter, on January 10, 1961, January 24, 1961, and June 7, 1961, in such cause No. 12692, the trial court vacated and set aside the peremptory writ of November 10, 1960, with respect to lands of those intervenors and entered seven new judgments. Six of these judgments permanently enjoined plaintiff and his successors and assigns and the defendants and their successors in office, respectively, from enforcing against the lands of the aforesaid intervenors "the collection of any unpaid assessments for improvements and benefits heretofore made within said Verdigris drainage district No. 1". The seventh judgment (peremptory writ of mandamus) entered on January 24, 1961, recited the entering on May 17, 1946, in cause No. 10561, a judgment determining the amount due by said drainage district in the sum of $11,508.76; that no taxes were levied to pay same and that on the 27th day of December, 1948, in cause No. 10709, the Court determined that $13,313.19 with interest to the date of judgment was due on the 1946 judgment, described the land subject to that judgment, ordered defendants in said action to levy a tax for the purpose of paying the same

and that a tax was levied on said land and collected but the amount levied was not sufficient to pay the same; that $11,239.22 should be levied on certain described land to pay the same; and that "the judgment entered herein on November 10, 1960, is canceled and this judgment is entered in lieu thereof."

Thereafter, the landowners here involved and whose lands were described in such seventh judgment filed application to intervene, and also motions to vacate the judgment entered on January 24, 1961, directing assessments against their lands. Such motions were heard on December 11, 1962. At the conclusion of the hearing, the trial court entered judgment vacating the judgment entered on January 24, 1961. In its judgment of December 11, 1962, the trial court found that on the dates of all previously entered judgments the intervenors here involved, or their predecessors in title, were the owners of real property lying within and comprising a part of Verdigris Drainage District No. 1 and "were the real parties in interest in each of said numbered cases and were indispensable parties thereto", that "inasmuch as the intervenors herein or their predecessors in title, were not parties defendant to this action, case No. 12692, this Court was without jurisdiction to make and enter the said Journal Entry of Judgment [peremptory writ of mandamus] on the 24th day of January, 1961, and that the same was a nullity and should be vacated, set aside and held for naught insofar as it directs and compels the defendants herein named in the caption hereof, or their successors in office, to make further levy * * * to satisfy the purported judgments entered in cases numbered 10561, 10709 and 12692". The trial court further found that all levies and assessments theretofore made against the respective lands of the above named intervenors had been fully paid and discharged. From such judgment and the overruling of his motion for a new trial, the plaintiff appeals.

The County Treasurer of Wagoner County testified that in the years 1949, 1950, and 1951, assessments were made against lands in the drainage district to pay the 1946 judgment; that $8,718.93 was collected and paid to plaintiff; that the original bonds of the drainage district were paid in 1923; that thereafter there were no warrants of indebtedness issued against the district; that there is no record of any indebtedness now against the drainage district other than the 1946 judgment to which reference has been made hereinabove.

For reversal plaintiff advances two propositions. The first is that "The district court, on December 11, 1962, had no jurisdiction to set aside or vacate the judgment entered on January 24, 1961."

Plaintiff's second proposition is that "Being a mandamus action, it is not necessary to have a summons issued in this case".

Under the first proposition the only argument advanced by plaintiff is that "Title 12, pp. 1031–1032 and 1033 contain the provision by which the District Court may vacate a former judgment but none of these provisions were used in this case." Under such proposition plaintiff cites only the head-notes from West's Oklahoma Digest, Judgment ▮▮▮▮▮▮▮▮ and states: "Title 20, p. 95, Statutes 1951, provides for the terms of District Court, as follows: 'Two regular terms of the District Court shall be held each year in each County of this State. The time of commencing or convening these two regular terms in each County shall be on the first Monday in January and the first Monday in July in each year.' Title 12, pp. 1031–1032 and 1033 contain the provision by which the District Court may vacate a former judgment but none of these provisions were used in this case."

Under the second proposition plaintiff advances no argument whatsoever. The only language in support of such proposition is as follows: "That no summons has

been issued in mandamus proceeding held not to render court without jurisdiction to issue alternative writ of mandamus, since alternative writ takes the place of both petition and summons in an ordinary action. (St.1931, p. 734).

"A summons is not a prerequisite to a peremptory writ of mandamus, but an alternative writ takes the place of both the petition and summons in an ordinary civil action. Board of County Com'rs of McIntosh County, et al v. Kirby, Court Clerk, et al, No. 26607.

"Strictly speaking, issues in mandamus cannot be joined until the alternative writ is issued. The alternative writ takes the place of both the petition and the summons in an ordinary civil action. State ex rel. Whitson, et al, v. Board of Com'rs of Ellis County. (No. 7907) [65 Okl. 273], 166 Pac.Rep., page 423." The first paragraph above quoted is a part of the editorial syllabus in the Kirby case, 174 Okl. 20, 49 P.2d 746.

In the "Conclusion" of plaintiff's brief is the following argument:

"As shown in Proposition I, the District Court had no jurisdiction to set aside or vacate a judgment entered on January 24, 1961. This judgment, when filed, made no attempt to comply with 12 Oklahoma Statute Annotated, Pages 1031, 1033. The final Judgment of the District Court could not be changed in any way.

"The District Court tried to say that because no summons had been issued, the original judgment was without jurisdiction but Proposition II disproves this suggestion."

From the record in the instant case we are unable to determine the facts and circumstances surrounding the incurring of the indebtedness sought to be collected or the reasons why apparently no contest was made by the drainage commissioner or the landowners in said district, intervenors herein, to the rendition of the previous judgments which intervenors allege are illegal and void.

Our own independent research has led us to the case of Board of County Commissioners of Wagoner County, et al. v. District Court of Wagoner County, et al., 200 Okl. 590, 198 P.2d 428. In that action the Board of County Commissioners of Wagoner County and the owners of land in the Verdigris Drainage District No. 1 petitioned this Court to issue a writ of prohibition to prevent the enforcement of a judgment entered in cause No. 10561, District Court of Wagoner County. In the opinion in that case, certain facts are set forth which provide the history of the instant case. Such language is as follows:

"From the petition and response it appears that after Verdigris Drainage District No. 1 had been organized and the improvements contemplated by the original proceeding had been paid and the bonds issued discharged, the County Surveyor of Wagoner County, in 1933, apparently purporting to act for the district in some manner not clearly disclosed by the pleadings, incurred an indebtedness sought to be charged against the district, but which petitioners allege was illegal because not incurred as provided by law. This alleged indebtedness was evidenced by warrants issued pursuant to a judgment against the district in Cause No. 8527, District Court of Wagoner County, the judgment being rendered on December 10, 1943. This judgment was rendered on an appeal taken by claimant from the action of the Board of County Commissioners disallowing the claims, and directed the Board of County Commissioners as the Board of Drainage Commissioners of said district to allow the claims and issue warrants therefor. This order was enforced by a contempt proceeding brought against the Board of County Commissioners.

"Thereafter by subsequent proceedings in mandamus in Cause No. 10378

in the District Court, the County Treasurer of Wagoner County was required to register the warrants issued as aforesaid.

"Thereafter by a judgment rendered in an action on the warrants, being No. 10561 in the District Court, brought against the Board of County Commissioners of Wagoner County, it was ordered by the District Court that said judgment be paid in the due and ordinary administration of the county's affairs, from a fund arising from assessments levied upon the lands composing Verdigris Drainage District No. 1.

"Prior to the bringing of the action last mentioned neither the Drainage Commissioner for Verdigris Drainage District No. 1 nor the land owners in said district had, so far as the record shows, seriously contested the rendidition of the judgments, nor did the defendants in any of said cases appeal from said judgment to this court. The land owners attempted to intervene in the cause last mentioned, No. 10561, but their petition in intervention was denied by the trial court, and no appeal was taken from that denial. The County Commissioners likewise filed a motion in said cause to vacate the judgment, which motion was denied, and no appeal taken from that denial. After the judgment was rendered in Cause No. 10561, the plaintiffs below brought a proceeding in mandamus against the County Excise Board of Wagoner County to require it to include the judgment of plaintiffs in the budget for the county for the fiscal year 1947–1948, and to make a levy against the land in Verdigris Drainage District No. 1 for said fiscal year and the two next succeeding fiscal years, thus creating a fund for the payment of said judgment. This action is now pending. It also appears that plaintiffs had brought another proceeding in mandamus against the Board of County Commissioners to require them to comply with 82 O.S. 1941, §§ 401, 402 and 403, providing for the levy of a tax to pay judgments against drainage districts, and that said action is now pending."

In refusing to issue the writ of prohibition requested in that case this Court said:

"* * * But we think petitioners and the drainage district have adequate remedies at law, and that therefore, we may not, under the authorities above cited, issue the writ as prayed for. By 82 O.S.1941, § 411, it is made the duty of the drainage commissioner to represent the drainage district in all actions or proceedings for or against the drainage district. See Montgomery v. Krouch, 77 Okl. 51, 186 P. 218; Niblo v. Drainage District No. 3, 58 Okl. 639, 160 P. 468. We think the drainage commissioner, under authority granted by this section, may be made a party to or intervene in the pending actions seeking to enforce the various judgments which petitioners contend are void. Such intervention is authorized by 12 O.S.1941, §§ 231, 236.

"In Morton v. Baker, 183 Okl. 406, 82 P.2d 998, we said:

"'A plea of intervention is proper in a case where it is shown by the pleadings of the plaintiff and defendant that another party has an interest in the subject matter of the lawsuit, and it is error to refuse a plea of intervention under such circumstances.'

"Certainly the drainage commissioner and petitioner are vitally interested in the levying of an invalid or void assessment against the lands of the district, or in any proceeding seeking to establish and enforce a lien against the lands therein."

\* \* \* \* \* \*

"* * * If in such case for any reason the drainage commissioner fails

or refuses to act, then, we think, upon a showing of such failure or refusal, the landowners in such district would have the right to intervene and be made parties defendant, and set up the invalidity of the judgment sought to be enforced. Certainly they are interested parties whose intervention is authorized by sections 231 and 236, supra.

"We are also of opinion that when the levy made pursuant to the writ of mandamus issued by the district court is sought to be collected from the district if the judgment on which such levy is made is void, as contended by petitioners, the drainage commissioner, or the landowners, or both, could enjoin the collection of said taxes under authority granted by 12 O.S.1941, § 1397. In such proceedings in the lower court, whether by intervention or injunction, testimony could be introduced and the facts and circumstances surrounding the entire transaction resulting in the judgments above specified could be adequately developed, and the right of appeal would exist if the drainage commissioner or the landowners were denied their rights."

Intervenors contend that the case of Barrett v. Board of County Commissioners of Tulsa County, 185 Okl. 111, 90 P.2d 442, is controlling in the instant case. Such assertion is not disputed by plaintiff. In the Barrett case landowners in the drainage district sought to enjoin the imposition and collection of additional or supplemental assessments against their lands which were to be made for the purpose of paying a judgment obtained by the original holders of bonds against the drainage district. The original assessments to pay the bonds were insufficient.

The landowners were not parties to the proceedings wherein the judgment was obtained. In the Barrett case this Court said:

"* * * One essential to the validity of the judgment is jurisdiction over the parties (Re protest of St. Louis-S. F. Ry. Co., supra [157 Okl. 131, 11 P.2d 189]) and a judgment or a portion thereof which attempts to settle the rights of parties over whom the court has no jurisdiction is void as to such parties. It violates the due process clause of the United States Constitution.

"In Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969, the Supreme Court of the United States, speaking through Mr. Justice Holmes said [(35 S.Ct.) page 595] : 'Whatever disagreement there may be as to the scope of the phrase "due process of law," there can be no doubt that it embraces the fundamental conception of a fair trial with, opportunity to be heard.' "

In 12 Am.Jur., Constitutional Law, pp. 334 and 335, § 642 is the following language :

"It is a general rule that 'due process requires that after an assessment has been made by an assessor, it cannot be increased by a reviewing board without notice to the taxpayer or opportunity to be heard. Hence, a statute giving a reviewing board power to increase individual assessments without notice to the taxpayer or provision for review is unconstitutional as denying due process. The law authorizing such proceedings must require notice or it will be unconstitutional. It is not enough that a person may by chance have notice or that he may as a matter of favor or courtesy have a hearing. A statute giving to a tax commission power to increase individual assessments, without providing for notice to the taxpayer other than is given by the fact that the time of the meeting of the commission is fixed by law, does not afford the notice necessary to due process * * *."

In 28 C.J.S. Drains § 76, page 454, is the following language:

"As a general rule, before there can be a reassessment of benefits by a drainage district, or the levy of an additional assessment by such district, authority therefor must be found in the controlling statutes * * *."

Cited in support of such statement is the Barrett case, supra.

The plaintiff has not referred us to any statutory or case authority for making additional assessments without notice to the interested landowners when the first series of assessments proves insufficient, nor have we found such authority.

In the case of Wrightsman v. Stephenson, 168 Okl. 63, 33 P.2d 499, 503, we said:

"The statutory provision in question authorizes a reassessment of property within the district on which the original assessment has been declared void. It does not authorize a double or supplemental assessment of other property in the district. * * *"

The case of Tringali v. Board of County Commissioners of Pottawatomie County, Okl., 10 Cir., 176 F.2d 110, 111, was an action to recover judgment for unpaid bonds issued by a drainage district and to require defendant board to levy assessments upon certain property in the district to pay the judgment. In its opinion the court said:

"* * * It follows that additional assessments may not lawfully be made against other land in the District, against which valid and proper original assessments had been made, for the purpose of providing a fund to pay the bonds in suit or any judgment rendered thereon."

In the case of Board of County Commissioners of Kiowa County v. Kiowa National Bank of Snyder, 175 Okl. 3, 52 P.2d 777, 779, we stated:

"It is our conclusion, however, that the trial court did err in that part of its judgment requiring the county commissioners to levy an additional assessment against the property already properly assessed for the purpose of paying that amount which could not be collected because of the fact that it had been levied against nontaxable Indian lands. This conclusion is reached after an examination of the case Wrightsman v. Stevenson (Stephenson), 168 Okl. 63, 33 P.(2d) 499, 503, and the authorities therein cited. In that case we had under consideration assessments imposed for the improvement of, not a drainage district, but a water improvement district, and the statutes pertaining thereto are very similar * * *."

* * * * * *

" 'However, when the assessments on a portion of the property within an improvement district have been declared invalid, the portion of the burden which should have been borne by that property cannot by means of reassessment be charged to the other property within the district against which original valid assessments still stand. Oklahoma City et al. v. Eastland, 135 Okl. 155, 274 P. 651. In the case of Severns Paving Co. v. Oklahoma City, 158 Okl. 182, 13 P. (2d) 94, at page 96, Mr. Justice Swindall speaking for this court said (referring to the holding in the Eastland Case): "The resulting loss could not be thrown upon the other properties by double assessment" * * * The fact that holders of special assessment bonds may suffer a loss does not militate against this holding. The law existing at the time the bonds were issued is a part of their contract and they are bound thereby. The previous expressions of this court concerning the uncertainty of payment of such

bonds, when property within a district is not properly assessable, have been clear. In the case of City of Enid v. Warner-Quinlan Asphalt Co., 62 Okl. 139, 161 P. 1092, this court said (referring to an assessment for paving on a government building): "A contractor is charged with knowledge of the law under which a contract for paving streets of a city may be entered into, and one who contracts to pave the streets of a city, in consideration of receiving assessments against abutting property of the streets paved, in payment of such paving, should, prior to entering into such contract, ascertain whether or not such assessments are enforceable, and upon failure to do so acts at his peril." ' "

The judgments obtained in 1946, 1948 and 1961 were rendered in proceedings in which intervenors herein, property owners in the drainage district, were not parties. In so far as such judgments attempted to increase the burden authorizing an additional assessment without statutory authority and notice and thus prejudge their rights, same are nullities. We consider applicable by analogy certain language from the case of American-First National Bank of Oklahoma City v. Peterson, 169 Okl. 588, 38 P.2d 957, wherein in the second paragraph of the syllabus, we held:

"Since the power of a municipality to levy special assessments depends on express provisions of charter or statute and the extent of such power and the manner of its exercise is to be determined by the construction of the charter or statute, the grant of power is to be strictly construed as against the city."

Affirmed.

BLACKBIRD, C. J., and DAVISON, JOHNSON, JACKSON and BERRY, JJ., concur.

IRWIN, J., concurs in result.