**Bird LANCE, Jr., et al., Appellants,**

v.

**The CITY OF SULPHUR, Oklahoma, a municipal corporation, et al., Appellees.**

**No. 44779.**

Supreme Court of Oklahoma.

Nov. 21, 1972.

Crowe & Crowe, Inc. by Robert D. Crowe, Oklahoma City, for appellants.

Millard F. Lowrance, Sulphur, for appellees.

DAVISON, Vice Chief Justice:

The basic issue in this appeal is whether, on the basis of Appellants' evidence, the City of Sulphur, Oklahoma, took the procedural steps necessary as conditions precedent to its exercise of the power to create Sewer District No. 36. The City might have proceeded under any one of three statutory plans: One plan (11 O.S. 1961, § 270.6 et seq., Supp.1963) is initiated whenever the record owners of more than one-half (½) the area of the land liable to said assessments petition the governing

body of the City for the establishment of a sanitary sewer district. The other plans (11 O.S.1961, § 270.8 and § 277, Supp. 1963) may be initiated by the governing body without the petition hereinbefore provided. § 270.8 specifies: "Whenever the governing body shall deem district sewers, * * * necessary, it may proceed with such work, * * * and shall, by resolution, require the city or town engineer, or other registered professional engineer, to prepare and file preliminary plans, showing a preliminary estimate of the cost of such improvement, and an assessment plat, showing the area to be assessed. * * *."

From our examination of the record, we conclude the City attempted to follow the plan prescribed in 11 O.S.1961, § 270.8 (Supp.1963). In their brief, property owners in proposed Sewer District No. 36, (Appellants) proceed on that assumption, and the City of Sulphur, et al., (Appellees) do not challenge that assumption.

In the attempt to create Sewer District No. 36, the following events transpired. Prior to the enactment of Ordinance No. 724, meeting of interested citizens were held and a group of such citizens met with the City Commissioners with a prepared ordinance. Whom this group represented is confused in the record. Regardless of how many property owners favored the creation of a sewer district, no petition was presented to the City Commissioners. Nevertheless, the City Commissioners, did, on November 7, 1967, pass and approve Ordinance No. 724, which was duly signed by the Mayor.

The Ordinance (1) declared necessity for the construction of Sanitary Sewer District No. 36, and described the property to be served, (2) declared that the consulting engineer for the City of Sulphur be directed to prepare plans, profiles and specifications for the district, with an estimate of the cost thereof, and file the same with the City Clerk, (3) provided that the Commission shall enter into a contract for the construction of the district improvements upon the approval and adoption of the plans, profiles and specifications and estimate and ordered that the payment of the whole cost of the project be apportioned, levied and assessed in the manner provided by law against lots, pieces and parcels of land benefited thereby comprising the sanitary sewer district, and (4) declared an emergency.

The contents of Ordinance No. 724 was published once (November 6, 1967) in the Sulphur-Times-Democrat.

Notice to contractors was published on April 10, 17 and 24, 1969, in the same newspaper, that sealed bids would be received for furnishing material and performing work for construction of sanitary sewers in Sewer District No. 36, Sulphur, Oklahoma, in accordance with the approved final plans, profiles and specifications on file in the office of the Mayor, or copies thereof may be obtained from Ray A. Drain, consulting engineer.

The City of Sulphur accepted the bid of Nelson Construction Company and entered into a construction contract with that company, under date of July 22, 1969. In Article 14, et seq. of the contract, Ray A. Drain is identified as the engineer of The City of Sulphur, with authority to act for the city on specified matters involving the administration of the contract.

What notices or information that were transmitted to the property owners in the sewer district by the city clerk is revealed by the following excerpt from the testimony of the city clerk.

"Q. (BY MR. CROWE) Mrs. Smith, with the exception of a notice that was sent out to the property owners after the work was completed and they were getting ready to levy the assessments, about August, did you ever send out a postal card notice to all the property owners included in this District of a proposed resolution or ordinance relative to the creation of this district?

"A. No.

"Q. You never mailed a notice to anyone at that time?

"A. No.

"Q. Now the statute provides that the Clerk shall mail the notice and shall make proof of it by filing an affidavit in your office. Of course, you didn't make such an affidavit, did you?

"A. No.

"Q. And none was filed in your office?

"A. No."

There was cross-examination, re-direct examination and re-cross examination on this subject, but there were no answers that altered the legal significance of the City Clerk's quoted testimony. According to the record no notice or information of any kind, including the required resolution of approval of the plans, was transmitted to the property owners, either by publication or by mail, after the enactment of Ordinance No. 724, until August 1970. This was after the completion of the projected Sanitary Sewer District No. 36.

The following facts were disclosed on cross-examination of six of the nineteen Appellants who were called to testify in the trial court.

Most if not all of the property owners in the proposed sanitary sewer district were interested in the establishment of the district, but not at any price. Although the existing use of septic tanks was creating problems in sanitation, the property owners retained a vital concern over the size of assessments to be levied against their property. There were some hints by the cross examiner that a petition had been circulated, but the record is clear there was no petition presented to the City Commissioners. There was, however, a meeting of some of the property owners, (probably less than half) in a bowling alley which resulted in the formation of a committee of five, who presented the problem to the City Commissioners and at the same time presented a proposed ordinance probably drafted by engineer Drain's attorney. (Drain was employed by the City of Sulphur as the engineer for the project). This proposed ordinance was enacted as Ordinance No. 724.

Notwithstanding the submission of the proposed ordinance and its enactment, the Appellants withheld their consent to establishment of the sewer district until they were informed and had considered the cost of the project. Two of the six Appellants knew nothing about the work or its progress; four of the Appellants viewed the work from time to time. What knowledge the 13 other Appellants had of the work progress the record does not reveal.

On the basis of the foregoing, we must determine whether the City of Sulphur did what it was required to do under § 270.8 to clothe it with power to construct Sanitary Sewer District No. 36. We shall assume that before the published notice was given to contractors to submit bids, the Professional Engineer's preliminary plans, preliminary estimate and assessment plat was adopted by the City Commissioners.

Under 11 O.S.1961, § 270.10 (Supp.1963) the publication of the creative ordinance is not the only jurisdictional requisite. Upon the approval, by resolution, of the preliminary plans for the sewer district, and preliminary estimate and assessment plat and the declaration that the work of improvement is necessary to be done, the resolution shall be published for two successive weeks in a newspaper of general circulation in the city or town. The publication of the resolution shall further provide: "That if the record owners of more than one-half in area of the land to be assessed shall not within fifteen (15) days after the last publication thereof, file with the Clerk of said incorporated city or town, their protest in writing against the improvement, THEN THE INCORPORATED CITY OR TOWN SHALL HAVE THE POWER to cause such improvement to be made and contract therefor and to levy assessment for the payment thereof; * * *." (Emphasis supplied.) The legislative intention to make the publication of such resolution containing the warning to property owners in the proposed sewer district, a jurisdic-

# 870

tional step in the creation of the city's power, is clearly evidenced by this language. This requisite notice was not given to the property owners either by publication or by mailing. One Appellant, Leona B. Colbert, whose land is of doubtful status in the sewer district, knew nothing about the creation of the district until it was completed.

■ We deal here with a statutory plan which compels property owners to pay for the construction of the sanitary sewer district. Procedures designed for their protection must be strictly construed in favor of the property owners. Accordingly, in Bonney v. Smith, 194 Okl. 106, 147 P.2d 771, 773, we said:

> "Since the creation of these districts and the apportionment of the cost thereof to the properties affected is not an inherent power that can be exercised by municipalities in the absence of statutory grants of power and since it is generally held that statutory grants of such power must be explicit and must be strictly construed, and must be strictly applied against the exercise of the power in any manner save in the most literal sense within the meaning of the language of the statutes, American-First Nat. Bank v. Peterson, 169 Okl. 588, 38 P.2d 957, we can not overlook the failure to publish this ordinance on the theory it was an emergency ordinance."

See, also, American First National Bank of Oklahoma City v. Peterson, 169 Okl. 588, 38 P.2d 957. Here there was no publication of the required resolution of adoption and approval of the preliminary plans, the preliminary estimate and the assessment plat and the warning to property owners.

The Appellee, City of Sulphur, cites Nickerson et al. v. Incorporated Town of Waynoka et al., 148 Okl. 198, 297 P. 813, and City of Coalgate et al. v. Gentilini, 51 Okl. 552, 152 P. 95, for the proposition that no matter how important and how many statutory requirements the City Commissioners ignore, if certain of the property owners knew the Commissioners were proceeding with the work, such property owners may not later question the failure of the Commissioners to comply with the law.

When Nickerson and City of Coalgate were decided all that was necessary to confer power upon a municipality to create a sewer district was the enactment of the creative ordinance and its publication. As late as 1971, we reiterated in Hamilton v. The Town of Valley Brook, Oklahoma et al., Okl., 487 P.2d 708, 711, what we recognized in Nickerson, City of Coalgate and other cases when, quoting from Decker v. Ponca City et al., Okl., 361 P.2d 195, we said:

> "*Where jurisdiction is conferred* upon a municipal body to provide for paving its streets, and charge the cost thereof against the property benefited, according to the method provided by law, a property owner who stands by while such work is being prosecuted, with full knowledge that large expenditures are being made for such improvement which will benefit his property, will not, after the work is completed, be afforded relief by injunction against assessments levied against the property benefited to pay for such work." (Emphasis added).

■ But here jurisdiction was not conferred. There was no publication (publication in two successive Thursday issues was required) of a resolution approving the preliminary plans, preliminary estimate and assessment plat and containing a notice that the City of Sulphur shall have the power to cause the improvement to be made if within 15 days from the last publication the record owners of more than one-half in area of the land to be assessed do not file their protest in writing against the improvement. The requisite resolution of the City's legislative body containing the statutorily required notice to property owners did not receive the requisite publication. Related to this jurisdictional obligation of the City of Sulphur to publish its resolution of approval containing its warn-

ing to property owners is § 270.13, which confers upon any property owner the right to institute an action to contest the approval and adoption by the City of the plans, specifications, estimates and assessment plats. This action may only be instituted after such approval and adoption. Obviously, the publication of the resolution of adoption and approval of the plans, specifications, estimates and assessment plats was to give notice to property owners and to set the time running within which the property owners could exercise their right to contest the action of the City. In fact, the property owner is limited in his attack to the right of action prescribed in § 270.13. Holt v. Board of Commissioners of Oklahoma County, 205 Okl. 178, 236 P.2d 476, 479. And the action must be filed within the fifteen days. Riedt et al. v. City of McAlester, Okl., 262 P.2d 152, 154. We reiterate our holding that the publication of information is jurisdictional, which information is necessary to enable a property owner to timely file the statutorily prescribed action to question the City's adoption and approval of plans and proposed assessments for the creation of a sanitary sewer district. The publication of the required information did not occur.

We do not reach the question whether the failure to *mail* postcard notices or copies of the required newspaper publication constitute a jurisdictional defect without regard to whether the involved property owners *received* the notices. Neither do we reach the constitutional issues posed by Appellants.

Counsel for Appellees made suggestions without evidential support during his cross-examination of Appellant Cozad that (1) a petition, favoring the proposed sewer district signed by more than one-half of the property owners in the proposed sewer district, was submitted to the City Commissioners; (2) City's engineer, Drain, was made a deputy city clerk for the purpose of serving notices; and (3) that Appellant Cozad, or one Dick Jennings, delivered to "the newspaper" for publication a notice informing property owners of their right to protest. The Appellees' opportunity to offer proof on such matters was precluded when the trial court sustained Appellees' demurrer to Appellants' evidence. That opportunity will be present during a new trial.

Since we hold that the Appellee, City of Sulphur, did not take the steps necessary to acquire "the power to cause such improvements to be made and contract therefor and to levy assessments for the payment thereof" the judgment of the trial court is reversed and remanded for a new trial.

WILLIAMS, JACKSON, IRWIN, HODGES, LAVENDER, BARNES and SIMMS, JJ., concur.